Donahue, Appellant, *v.* R. C. Mahon Company, Appellant.

Argued March 15, 1971. Before WRIGHT, P. J., WAT-KINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*George J. McConchie,* with him *Cramp & D'Iorio,* for defendant-appellant.

*Philip R. Detwiler,* with him *Butera and Detwiler,* for plaintiff-appellant.

*George J. McConchie,* with him *Cramp, D'Iorio, Mc-Conchie and Surrick,* for appellee.

OPINION BY MONTGOMERY, J., June 22, 1971:

This is an action in assumpsit in which plaintiff Neuman Donahue, individually and trading as Armstrong & Donahue (Donahue), recovered a jury verdict in the sum of $52,072.57, plus interest of $3,905.44, against the defendant, R. C. Mahon Company (Mahon). The action was commenced in foreign attachment but the attachment was dissolved before trial. The amount of the verdict was determined after allowing as a credit a counterclaim asserted by Mahon in the agreed amount of $6,506.34. Mahon filed motions for judgment n.o.v. and for a new trial. The motion for judgment n.o.v. was refused and Mahon appealed. The motion for a new trial was granted and Donahue appealed.

Donahue is an individual proprietorship engaged in the business of erecting structural steel and steel paneling. Mahon is a corporation engaged in the fabrication of steel paneling. Mahon's contracts with purchasers include the erection of such panels but it generally engages independent contractors to install them. Donahue is such an independent contractor who negotiated with Mahon through its representative, Merle Feltenberger, who also in behalf of Mahon generally submitted bids for such work to the general contractors on the various jobs.

Plaintiff and Feltenberger negotiated for a series of ten unrelated jobs. The course the parties followed is described in Mahon's brief (History of the Case), to which Donahue subscribes, as follows: "Generally, Feltenberger would learn of a job and contact Donahue. These two would then familiarize themselves with what was required by way of material and erection, and Donahue would then submit to Feltenberger his bid for the labor involved in the erection. As a rule, this bid would at first be orally communicated to Feltenberger by Donahue. In due course Feltenberger would orally report back to Donahue that Donahue had the job, if such was the case. Donahue would then follow up his oral quotation with a written bid which identified the job in question, contained a brief statement of the work to be done and quoted the price. These written bids were addressed to the Mahon Company c/o Feltenberger. In due course Mahon would send to Donahue a written purchase order in the form of a formset. This purchase order contained a description of the work to be done, the price quoted to Mahon by Donahue and a separate sheet containing a number of paragraphs referred to as clauses, one of which always stated that all extras, additions or changes would have to be in writing and that the prices contained in the purchase order were firm. Donahue

would then sign and return one of the copies of this purchase order from the formset to Mahon, retaining a copy for himself along with the sheet containing the several clauses. As often as not, however, Donahue would have already started the work before receiving Mahon's purchase order. It was Donahue's practice to send invoices to Mahon for a full month which were then paid by Mahon within two or three weeks."

The first nine contracts were completed with only minor disputes. The tenth contract relating to the renovation of the Boeing-Vertol Corporation at Eddystone, Pennsylvania, is the only one about which there is any serious dispute.

The contentions of the parties are exemplified in the pretrial report agreed to by them which reads in part as follows:

"The pleadings contain certain admissions which will form the agreed facts in this case.

"Counsel are agreed that the following statement may be read to the Jury as agreed facts: Plaintiff and Defendant entered into a series of eight [1] separate *written* contracts between August, 1965, and January, 1966, whereby for an agreed price for each job Plaintiff was to install Defendant's sidewall at various construction sites located in Montgomery and Delaware Counties. The principal contract in question involves the plant built in Eddystone, Pennsylvania, for the Boeing-Vertol Corporation. Defendant was a subcontractor of Austin Company, general contractor on the Boeing-Vertol Corporation job. Plaintiff was a subcontractor of the Defendant. Defendant has paid Plaintiff a total of $83,889.45 in respect to all jobs. [Emphasis supplied]

"Plaintiff contends that in regard to the Boeing-Vertol Corporation job that he was delayed substan-

---

[1] The first two contracts were not included in this suit,

tially in commencing his operations because Defendant failed to deliver materials and have conditions in proper order on the date scheduled. As a result, since a deadline had to be met, Plaintiff was required to vastly increase his number of employees and the entire scope of his operation. The total man hours required to complete the job were increased greatly because Plaintiff had to perform many things not originally a part of his contract. Because of the importance of meeting the deadline Defendant's representative on many occasions assured Plaintiff that his contract would be modified to make fair allowances for the various increases and Plaintiff proceeded to complete the job on a time and material plus overhead and profit basis. A detailed breakdown of the costs, etc. is in the complaint.

"In regard to the other jobs Plaintiff contends that all work was completed satisfactorily and that he was not paid in full.

"Defendant contends that it was backcharged by its customers on several of the jobs and hired a third party to complete another of the jobs for a total cost to Defendant of $9,802.13. The parties orally adjusted the contracts on three or four occasions and Defendant contends that the total agreed price for the eight contracts as orally adjusted was $93,691.58, the sum of the $83,889.45 agreed by the parties to have been paid by Defendant to Plaintiff and the $9,802.13, contended by Defendant to have been incurred by it as above stated.

"Further, Defendant contends that Plaintiff was woefully ill-equipped, ill-experienced and under-capitalized for the totality of these undertakings and incurred debts to certain of his subcontractors which Defendant had to pay in order to receive final payment from one of its customers. These debts totaled $10,831.30, but Defendant was able to settle them for

a total of $6,750.00 and has taken assignments from these subcontractors. Plaintiff is indebted to Defendant by reason thereof in the sum of $6,750.00."[2]

At the conclusion of a nine-day trial, at which much evidence was given concerning meetings between Donahue and Feltenberger prior to November 16, 1965, and thereafter between Donahue and other representatives of Mahon at which negotiations were conducted and disputes resolved, the trial judge left to the jury the issue of whether the contract for the Boeing job was oral or written and whether it subsequently had been modified. Mahon cites these submissions as error and argues that the record sustains only a finding of a written contract unalterable except by subsequent writings; and, in the alternative, that the evidence was insufficient to prove an oral modification of the written contract since it was not clearly, precisely and indubitably established either by the testimony of two witnesses or by one witness and corroborating circumstances.

In granting a new trial, the lower court acknowledged error in permitting the jury to determine whether the contract between the parties was oral or written. Its reason for doing so was that the pretrial statement of agreed facts stated that all contracts between the parties had been written.

The second reason assigned for the grant of a new trial is closely related to the first. Since the court determined that the contract was admittedly a written one and that oral modifications of such a contract were provable only by clear, precise and undubitable evidence and established by two witnesses or one witness and corroborating circumstances it concluded that the jury had not been properly instructed on this point of law.

---

[2] By agreement at trial this was reduced to $6,506.34.

As we review this record, we find much confusion. Initially Donahue alleged in his complaint that he had performed work for Mahon on eight jobs on purchase orders providing for specific amounts, the Boeing order being for the sum of $49,487.85. Preliminary objections having been filed to this complaint, an amended complaints was filed which alleged eight oral agreements confirmed by purchase orders.

The oral agreement for the Boeing job was alleged to have been made November 16, 1965, at the ". . . price of $0.125 per square foot, involving a total of 270,000 square feet, as confirmed in Purchase Order M29145, dated December 20, 1965." He further alleged that on many occasions subsequent to November 16, 1965, said oral contract had been so modified that extra time and materials were required for which defendant agreed to pay. However, in claiming damages for work done on this job, Donahue claimed payment for all labor, material and incidental expenses incurred by him, plus overhead and profit, instead of claiming the amount indicated by the original contract for a specified unit price plus extras caused by the subsequent alleged oral modifications of the contract.

By way of answer to the amended complaint, Mahon denied its allegations and, as to the Boeing job, alleged a written offer made by Donahue on November 16, 1965, which had been accepted by the aforesaid purchase order of December 20, 1965. Two oral modifications thereof, explained in the new matter, acknowledged liability for approved overtime for two shifts working on December 27 through December 29, 1965, for $2,239.-90, and another during the week of January 1, 1966, in the amount of $2,525.30 or a total of $4,765.20 addition for overtime.

Donahue, in reply to this new matter, "admitted that overtime was specifically authorized on the two occasions set forth in ¶22 [the above two] . . ." but de-

nied that they were the only two occasions on which overtime was authorized.

What adds to the confusion is that the Mahon's purchase order of December 20, 1965, did not accept the written offer submitted by Donahue on November 16, 1965, on the terms the offer was made but added six new clauses. Donahue subsequently signed his acceptance to this order, as prepared by Mahon, although he had completed a large amount of the work by that time.

This was the state of the pleadings when the pretrial conference was held on January 12, 1967, as a result of which the report previously set forth was prepared and signed by the Court Administrator who subsequently submitted it to the court for approval.

Further confusion arises from a stipulation agreed to by counsel for both parties on January 30, 1967 ( subsequent to the pretrial conference and report), that Donahue's amended complaint be amended in connection with the Boeing job by alleging that:

"11 (d) In the alternative, if there was no specific oral modification of said contract, plaintiff avers that defendant failed to perform in accordance with the terms of said contract . . .", which caused Donahue to do many more things than were required under the oral contract. The stipulation also contained a provision that the amended complaint should be considered as "hereby so amended".

Two things appear clear. First, the supplemental statement of claim to which the lower court referred in its opinion as not having been found by it was in fact the stipulation of January 30, 1967, which by its terms constituted the intended amendment. Second, by this stipulation the parties impliedly if not expressly nullified their pretrial agreement in the particular that the Boeing contract sued on was written, and preserved that issue as one to be resolved at trial. Thus we must

conclude that it was not error for the lower court to have submitted this issue to the jury.

The pretrial report supports the conclusion that the parties did not intend that the writings to which they therein referred were fully integrated contracts since, in the contention of Donahue set forth therein, a deadline for completion of the work is mentioned; also, certain duties relating to delivery, preparing working conditions, and so forth, on the part of Mahon are referred to. None of the writings referred to in the pleadings or offered into evidence at the trial contained any such provisions. Thus, Mahon, as a party to the pretrial agreement, was fully aware that the trial would proceed on the basis of this contention, i.e., that, in addition to the writings, there were other provisions of their contract orally agreed to.

Considering the second reason assigned for the award of a new trial, we again are in disagreement with the lower court. Since the jury might reasonably have found that part of the Boeing contract was in writing, such part would require evidence to change it by a subseqeunt oral agreement of the quality and quantity set forth in *Pellegrene v. Luther,* 403 Pa. 212, 216, 169 A. 2d 298, 300 (1961), "The oral contract which modifies or changes or cancels a prior written contract must be proved by evidence which is clear, precise and convincing:"

The charge appears sufficient on this point. In the original charge the trial judge instructed the jury as follows: "Now, where a party seeks to establish a change in a contract, whether it be oral or written, that party has the burden of proof. The Plaintiff has the burden of proof here to establish the oral contract by evidence which is convincing to you not to an absolute certainty or beyond all reasonable doubt, but sufficient in quantity and quality to establish the existence of the agreement and its terms. The actions

of the parties, their conduct, the circumstances and relations existing between them are all elements to be given due consideration in determining both the existence and the terms of such an agreement. The mere suggestion or the possibility of a contract rising from a transaction between the parties would not be enough. There must be evidence authorizing more than a conjecture and a guess."

And then again, in affirming Mahon's points, the court said, "Members of the Jury, . . . we always ask counsel if they desire to submit points of law and we will comment upon them. . . . 3. Although a written agreement can be modified by a subsequent oral agreement, the subsequent oral agreement must be based upon a valid consideration and be proved by evidence which is clear, precise and convincing. That is affirmed."

The lower court was correct in charging that the evidence required to modify a written agreement by a subsequent oral agreement needs to be proved by evidence which is clear, precise and convincing. The requirement of two witnesses or one witness and corroborating circumstances, which was relied on by the lower court in its opinion, applies only to the proof needed to reform an instrument which through fraud, accident, or mistake does not reflect the original agreement or intention of the parties. See *Easton v. Washington County Insurance Company*, 391 Pa. 28, 137 A. 2d 332 (1958).

Although we are in disagreement with the lower court on the two reasons it assigned for the grant of a new trial, we are in agreement with its decision to grant same. The verdict, if based on a modification of the original contract, whether oral or written, or partly of each, completely ignored what clearly appears to have been the basic agreement of the parties, i.e., that Donahue would do the Boeing job at a specified

unit price. This price was specified in the written proposal of November 16 and the accepted purchase order of December 20, 1965. Thus, this part of the contract was admittedly written and could be changed only by clear, precise and convincing evidence of a change in those terms. We fail to find evidence of such quality in this record. The only evidence offered by Donahue to support his theory of a modification to change the terms of the contract from a specified unit price to a cost plus overhead and profit was that of Donahue, who testified that when a dispute arose on December 30, 1965, or January 4, 1966, and he stopped work after the job was substantially completed, Mr. Varty, Mahon's representative, told him: "Q. What did Mr. Varty tell you when he turned and talked to you? A. His words to me were, 'He agrees, he realizes what has happened. We are going to take care of it for you. Go ahead and get the job done.'" [R. 167a] On redirect examination much later in the trial, Donahue again testified concerning Varty's so-called promise to him on December 30th (January 4th): "Q. Who told you? A. Mr. Varty told me. Q. What did he tell you? A. To proceed with the work. R. C. Mahon would pick up the costs; they would take care of the costs. By the Court: Q. That is all he told you? Just what you told us, to go ahead with the work and they would pick up the costs? A. That is the meat of it, your Honor. Q. I did not ask you if that was the meat of it. I asked you is that what he told you? A. Oh, yes. The Court: Do you understand what he said? Did you hear what he said? Mr. Varty said to go ahead and they would pick up the costs. That is all he said: [R. 715a-716a].

We cannot accept this as sufficient evidence to satisfy the rule previously discussed. Giving Donahue the benefit of all reasonable inferences that may be derived from that evidence, it indicates only that Mahon

would take care of any additional costs in order to get the job done. It cannot be interpreted, as Donahue would have us do, that it changed the terms of payment from the inception of the work. An oral modification of a contract changing the consideration from the inception of the contract from $64,024.58 to $139,065.-05 should be more convincing. This is particularly true since shortly after this change was allegedly made and the job was completed, Donahue submitted a final invoice based on the original terms specified in the offer and purchase order.

The final invoice, Exhibit D-H-12, dated February 7, 1966, reads as follows:

### FINAL INVOICE

*Your Order M29145* Boeing Vertol Corp. *Our Job 65-169*
Eddystone, Pa.

| | | |
|---|---|---:|
| 270,000 Sq. Ft. @ $.215 per sq. ft. ........ | | $58050.00 |
| 5,626 sq. ft. perimeter @ $.215 ........ | | $ 1209.38 |
| Previously invoiced overtime ........ | | 4608.50 |
| Overtime for week of 1-16-66: | | |
| Mechanics | 19 hrs. @ 6.10 | $ 115.90 |
| Foreman | 3 hrs. @ 6.65 | $ 19.95 |
| Gen. Foreman | 3 hrs. @ 6.95 | $ 20.85 |
| | | |
| Total Contract price ........... | | $64024.58 |
| Less previous invoices ........... | | $60305.50 |
| | | |
| Amount of this Invoice ........... | | $ 3719.08 |

See also Donahue's letter of January 20, 1966, wherein he makes claim for "added costs", plaintiff's Exhibit P-L.

Therefore, the lower court's grant of a new trial will be affirmed, for the reason that it was improper

to submit the question of the change in method of payment to the jury on the evidence submitted by Donahue.

We therefore deem it unnecessary to discuss the question of consideration for such a modification of the original contract.

Since the case must be retried, we concur with the lower court also in its order that the parties appear again at a pretrial conference where the issues and theories on which it will be retried may be made clear and precise. This conference should be conducted by a judge and not a court administrator, and any agreements resulting therefrom should be approved by order of court under Pa. R. C. P. No. 212.

If no additional testimony of a clear, precise and convincing nature is offered to prove a change in the terms of payment from a specific unit price to a cost plus basis, then Donahue must be compelled to prove the obligations assumed orally by Mahon as part of the contract, the additional costs he has been caused to incur by Mahon's alleged defaults, by his alleged advancement of the completion date, or by such alleged demands of Mahon for extras. The burden is on Donahue to prove the amount and items of pecuniary damages by proof of facts to furnish a basis for their assessment. *Becker v. Borough of Schuylkill Haven,* 200 Pa. Superior Ct. 305, 189 A. 2d 764 (1963). He cannot do so by rewriting the contract to a cost plus basis so as to lump his charges without the consent of the other party, as he has attempted to do in this case.

We make no ruling on the effect of the clause in the purchase order providing that there shall be no compensation for extras unless approved in writing by Mahon.

Under the circumstances, judgment n.o.v. for Mahon is not in order. Its counterclaim, previously agreed

to be in the amount of $6,506.34, may properly be allowed as a setoff against any claim of Donahue that may be recognized in the retrial, or a judgment may be entered for the defendant therein if no claim of Donahue is allowed.

Order granting a new trial is affirmed.

Order refusing judgment n.o.v. for Mahon is affirmed.