Margaret M. BLAIR, Appellant,

v.

The MANHATTAN LIFE INSURANCE COMPANY.

No. 82–5204.

United States Court of Appeals, Third Circuit.

Argued Sept. 13, 1982.

Decided Nov. 4, 1982.

Rehearing Denied Jan. 4, 1983.

Ronald D. Morelli, Meyer, Unkovic & Scott, Pittsburgh, Pa., for appellant.

Craig W. Jones, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for appellee.

Before SEITZ, Chief Judge, and GARTH and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

Margaret M. Blair, the plaintiff in this diversity action,[1] appeals from an order of the United States District Court for the Western District of Pennsylvania denying her motion for judgment notwithstanding the verdict. Mrs. Blair sued Manhattan Life Insurance Company (Manhattan) to recover life insurance benefits in the principal sum of $19,000.00 on the ground that Manhattan had issued an "interim life insurance policy" on the life of her late husband, Joseph R. Blair, designating her as the beneficiary, which policy was in effect at the time of his death. Manhattan filed an answer denying liability, and following discovery each party moved for summary judgment. The district court denied both motions and the case was tried to a jury. The jury returned a verdict in favor of Manhattan whereupon plaintiff timely filed a motion for judgment notwithstanding the verdict. The district court denied plaintiff's motion and she filed this appeal. We affirm.

---

1. The jurisdictional facts relating to diversity of citizenship and the existence of the requisite amount in controversy are undisputed.

## I.

Dr. Blair, formerly a sole practitioner specializing in obstetrics and gynecology, joined Source Gyneatric Associates (Source) as a permanent employee on or about March 1, 1975. On September 15, 1975, Source submitted an application for membership in the Affiliated Employers Group Life Insurance Trust Fund (Affiliated or Fund). By that application Source requested Affiliated to provide life insurance coverage for Dr. Blair in the amount of $19,-000.00 under Manhattan's group policy. In connection with this application, Source submitted a check dated September 30, 1975, in the sum of $134.02 payable to Arthur Tripp, Jr., an independent insurance broker who had been engaged by Source to aid in finding life insurance for Dr. Blair. The insurance application contained on its reverse side terms and conditions, of which paragraph 11 specifically provided:

> No insurance provided through the Trust shall take effect until this application has been approved and accepted in writing by the Trustee 'and that insurance as specified in the Schedule has been approved for coverage in writing by the insurer.

Dr. Blair's medical history accompanying the application reported a cardiac condition and the name of his treating physician. Nonetheless, Tripp did not, as was his practice with his prospects, advise Dr. Blair whether or not he was uninsurable. The medical examiner's report completed by Dr. Gillette, Dr. Blair's attending physician, disclosed a cardiac condition consisting of a systolic murmur, mild enlargement of the heart, and mild arteriosclerosis. The examining physician reported that the applicant appeared healthy and he recommended the risk.

At trial, the parties also stipulated to the following:

> Number 6. Following a review of Blair's medical condition, Manhattan declined to approve insurance coverage for Blair.

Number 7. Blair died on November 9, 1975.

Number 8. Manhattan, by letter dated November 14, 1975, advised the Melvin Agency that the application of Source had been declined and as administrator for the trustee of the Affiliated Employers Group Life Insurance Trust, forwarded a check in the amount of $134.02.

Number 9. The Melvin Agency, by letter dated November 18, 1975, advised Arthur D. Tripp, Jr., the soliciting agent, that the application of Source had been declined and forwarded the administrator's check in the amount of $134.02.

Relying on the Pennsylvania Supreme Court decision in *Collister v. Nationwide Life Insurance Co.,* 479 Pa. 579, 388 A.2d 1346 (1978), *cert. denied,* 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55 (1979), plaintiff presented her case on the theory that the acceptance of the advance premium by the insurance company gave rise to a reasonable expectation of interim insurance coverage and placed the burden upon the insurer to negate this inference by "clear and convincing evidence." At the conclusion of all the evidence, plaintiff submitted a written motion for a directed verdict on the ground that defendant had "failed to establish by clear and convincing evidence, that Joseph R. Blair had no reasonable expectation for believing that he was purchasing immediate insurance coverage." In denying the motion, the trial court instructed the jury, as the plaintiff acknowledges, in accordance with *Collister.* The jury, however, returned a verdict in favor of the defendant.

## II.

The sole issue raised by the appellant is whether she is entitled to judgment notwithstanding the verdict because, as she maintains, the defendant failed to establish by clear and convincing evidence that Dr. Blair, the applicant, had no reasonable basis for believing that he was purchasing interim insurance coverage.[2] Plaintiff asserts

---

**2.** Although the defendant has not cross-appealed, it contends on appeal, as it did in the district court, that the court erred in its ruling that

plaintiff's complaint was not barred by Pennsylvania's four year statute of limitations. As

that once she had made out a prima facie case based on stipulated facts, Manhattan then bore the burden under Pennsylvania law of rebutting her case with clear and convincing evidence. She contends that this it failed to do.

Although neither party has briefed the issue, a preliminary question confronting us is whether federal law or substantive state law governs the burden of proof and the standard to be applied.

> The question of which party bears the burden of proof in a diversity case ordinarily is a matter of substantive law within the meaning of *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and so is governed by state law. *Palmer v. Hoffman,* 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943); *Alcaro v. Jean Jordeau, Inc.,* 138 F.2d 767 (3d Cir.1943). In such a case, the district court is obligated to determine the burden of proof in accordance with the law of the forum state as required by the choice of law principles of *Klaxon v. Stentor Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

*DeMarines v. KLM Royal Dutch Airlines,* 580 F.2d 1193, 1200 (3d Cir.1978). *See also Fireman's Fund Insurance Co. v. Videfreeze Corp.,* 540 F.2d 1171, 1174–75 (3d Cir. 1976), *cert. denied,* 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977). Relying on *Collister v. Nationwide Life Insurance Co.,* 479 Pa. 579, 388 A.2d 1346 (1978), the district court instructed the jury on the burden of proof in accordance with Pennsylvania substantive law.[3] Nonetheless, the jury rendered its verdict in behalf of Manhattan, a verdict which the plaintiff now maintains is inconsistent with Pennsylvania's "clear and convincing evidence" standard because the only evidence introduced to meet Manhat-

tan's burden was the testimony of one witness, Arthur D. Tripp, Jr., and, as a matter of law, this testimony was insufficient.

Plaintiff also contends that Tripp's memory was faulty, lacked required detail, and essentially consisted of generalities. Although plaintiff concludes that as a general rule an appellate court may not, in considering a judgment notwithstanding the verdict, weigh the evidence, it urges us to do so in this case because the sufficiency of the evidence to meet the heavy burden imposed upon the defendant by the "clear and convincing" standard is a question of law under *Aliquippa National Bank v. Harvey,* 340 Pa. 223, 16 A.2d 409 (1940). In a supplemental memorandum responding to questions of this court at oral argument, counsel for plaintiff also argues that under this standard, the Pennsylvania Supreme Court in *Easton v. Washington County Insurance Co.,* 391 Pa. 28, 137 A.2d 332 (1957), requires that evidence must be established by two witnesses or by one witness and corroborating circumstances. He asserts that Manhattan introduced no corroborating evidence to support Tripp's testimony in behalf of the defendants.

Manhattan's position, on the other hand, is, as it was in the district court, that *Collister* is inapplicable because it dealt with an ambiguous conditional receipt; this case does not involve a conditional receipt and the limitations in the application are clear and unambiguous. Furthermore, Manhattan argues on appeal that even under the *Collister* standard, the evidence adduced at trial by Manhattan was sufficient to sustain the jury's verdict. As for the Pennsylvania two-witness rule, Manhattan's counsel replies that the rule was largely abolished by the Act of May 28, 1913, P.L. 358, 12 P.S.

---

we affirm the verdict for defendant on the merits, we do not decide this question.

**3.** Over the defendant's objections that *Collister, supra,* did not apply to the facts of this case, the trial judge instructed the jury that the defendant "has the burden of establishing by clear and convincing evidence that Dr. Blair had no reasonable expectation [of] temporary or interim insurance coverage under the poli-

cy.... The insurance company can sustain its burden by proving by clear and convincing evidence either that Dr. Blair did not have an expectation of such temporary insurance coverage under the policy or that if he had such an expectation of temporary insurance coverage, considering the facts and circumstances in this case, such an expectation was not a reasonable one."

**300**

§ 1222.[4] That statute preserved the rule only "where it is attempted to reform or overthrow a written instrument." There is no such effort here. On the contrary, Manhattan seeks compliance with the written application.

### III.

■ Imposing the burden of proof under *Collister* upon the defendant, the district court presented only a single issue to the jury: did Dr. Blair have a reasonable expectation that he had obtained temporary or interim insurance coverage under Manhattan's policy between the time that the application was submitted and the time that it was denied. The jury having returned a verdict for the defendant, the threshold question now before us is whether giving the defendant the benefit of all reasonable inferences capable of being drawn from the evidence, we must conclude that as a matter of law "the record is critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief." *Denneny v. Siegel,* 407 F.2d 433, 439 (3d Cir. 1969). *Accord, Neville Chemical Company v. Union Carbide Corp.,* 422 F.2d 1205, 1211–12 (3d Cir.), 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970). Because plaintiff on appeal also challenges Tripp's credibility, we take passing note that in considering a motion for judgment notwithstanding the verdict, we are not free to weigh the evidence, pass on the credibility of the witness, or substitute our judgment of the facts for that of the jury. *See* Wright & Miller, *Federal Practice and Procedure:* Civil § 2524 at 544. The case is also devoid of allegations that any of the principals committed fraud or misrepresentation.

■ The evidence is confined to a narrow range in time and fact. Dr. Blair completed the written application for insurance with Manhattan, candidly disclosing to Tripp that he had a heart condition and that Dr. Gillette, a cardiologist, was treating him. Because Dr. Blair was applying for group life insurance, he first had to seek membership in the Affiliated Employers Group Life Insurance Trust Fund before he could apply for insurance coverage. The very first sentence of the application to the Fund contained the statement that the application for membership is "in accordance with the terms, conditions, and representations set forth on the reverse side hereof." The reverse side, entitled "TERMS CONDITIONS AND REPRESENTATIONS," provided *inter alia* for the condition set forth in number 11, *see* p. 298, *supra,* that no insurance would be in effect until the insurer had approved the application in writing.

Tripp, an independent insurance broker since 1953, wrote insurance for a number of life insurance companies and had no employment relationship with Manhattan. He testified that Source requested Tripp's assistance in securing life insurance for Dr. Blair. After Dr. Blair completed his application and disclosed the cardiac problem, Tripp discussed in a general way with him the potential difficulties to be encountered with such a condition. He also discussed with Dr. Blair the conditions contained in paragraph 11 above. Although he did not read paragraph 11 to the applicant, he "discussed the elements of the provision completely as it so states, perhaps in different terms, but I got across the point that was stated in there." Tripp personally wrote on the application in Dr. Blair's presence that the applicant had "cardiac myopathy," Dr.

**4.** That statute provides:

Hereafter all bills and answers in equity shall be sworn to; and the rule in equity that the averments of a responsive answer must be overcome by the testimony of two witnesses, or of one witness sustained by corroborating circumstances equivalent to the testimony of another witness, in order to entitle plaintiff to a decree, is hereby abolished as to proceedings hereafter to be begun: Provided, That nothing herein contained shall affect or impair the requirements of proof in cases where it is attempted to reform or overthrow a written instrument. This section was recently repealed as obsolete rendering the statutory exception dubious. Act of July 9, 1976, P.L. 586, No. 142, 42 Pa.C.S. § 1722. In light of our discussion *infra,* we need not consider the effect of the repeal.

Blair's terminology, and Blair signed it. The application, dated September 15, 1975, requested that it be effective on the same date.

According to Tripp's testimony, with the submission of the advance premium of $134.02, the insurance would have been in force on September 15, 1975, if the applicant were medically approved. Tripp also submitted with the application a medical examiner's report dated September 15, 1975, completed by Dr. Theodore Gillette, the applicant's attending physician. According to Tripp, the medical report "must have been requested by either the home office or the general agency here in Pittsburgh." Although he could not recall any specific instruction to obtain the physician's report, he stated that whenever an application refers to a medical doctor, a request by the insurer for a report from him is "automatic." Notwithstanding the applicant's cardiac problem, Dr. Gillette recommended the risk.[5] Manhattan, however, declined coverage following a review of Dr. Blair's medical condition, and by letter dated November 14, 1975, so advised the insurance broker and returned the premium. Blair died on November 9, 1975. Stipulation of facts, 6 through 9, *supra*.

The plaintiff introduced no evidence that the language of the application or its terms and conditions were ambiguous. She predicated her case upon the application and advance premium, stipulations that Source, Blair's employer, submitted a check in connection with the application in the amount of $134.02 payable to Tripp, Stip. No. 5, and that Manhattan failed to decline coverage prior to the applicant's death. The trial judge also permitted Mrs. Blair to testify over defendant's objection "only for the limited purpose of determining the doctor's state of mind at that time" that Dr. Blair had told her that "he was now covered under the Source Clinic Group Life Insurance."

In *Collister v. Nationwide Life Insurance Co., supra,* the keystone case upon which the plaintiff structured her claim, the company's agent accepted a two-month premium payment and issued a conditional receipt. The applicant accidentally lost his life several weeks later and the company denied liability, asserting that certain conditions contained in the application, principally a medical examination, had not been fulfilled. Applicant's widow claimed that Nationwide created a temporary contract of insurance when it accepted the application form and the first premium payment which provided coverage for the period extending from the acceptance of the premium deposit until Nationwide either rejected the application because of insured's uninsurability or accepted the application and issued the policy. The court in *Collister* observed that Pennsylvania courts will not follow traditional contract principles of law in life insurance transactions between an insurer and the insured. The court noted that by the use of lengthy, complex, and cumbersome written applications, conditional receipts, riders, and policies, the insurance industry forces the customer to rely upon the oral representations of the insurance agent.[6] The court therefore concluded, "Courts must examine the dynamics of the insurance transaction to ascertain what are the reasonable expectations of the consumer." 479 Pa. at 595, 388 A.2d at 1354. Accordingly, it announced:

A. That is correct.

---

**5.** On cross-examination by plaintiff's counsel, Tripp testified:

Q. Now, Mr. Tripp, when you would discuss an application for group insurance or any type of life insurance, would you basically tell them that their application has to be reviewed by the company to determine whether they would issue a policy?

A. That is correct.

Q. And in the event an insurance company does not decide to issue a policy, there will be no insurance policy in effect, is that correct?

**6.** We note that the application form involved in the instant case was neither complex nor cumbersome. It consisted of a single sheet of paper printed on both front and back. The front requested information of the applicant and referred the applicant to the conditions on the opposite side. The conditions on the back side of the application were printed in the same size typeface as the questions on the front side, and covered only half the page.

In situations where the circumstances of the transaction do not indicate that the insurer intended to provide interim insurance, but nevertheless show that the insurer accepted payment of the first premium at the time it took the application, it is then up to the insurer to establish by clear and convincing evidence that the consumer had no reasonable basis for believing that he or she was purchasing immediate insurance coverage.

*Id.* at 594, 388 A.2d at 1353.

Although facially there are some differences between the acceptance of the premium by the *insurer's agent* and the issuance of a conditional receipt in *Collister,* and the *submission* of the employer's check to an independent broker in support of a group insurance application [7] without the issuance of a conditional receipt, in light of the instructions of the court and the jury's verdict, we will assume for purpose of our analysis, that *Collister* applies to this case.[8] The question then is whether as a matter of law there is sufficient evidence upon which the jury could properly find in favor of Manhattan. In assessing the evidence, we will not weigh the credibility of Manhattan's only witness, Tripp, or weigh the evidence but only determine as a matter of law whether the evidence was insufficient to create an issue of fact for the jury. *See United States v. Bucon Construction Co.,* 430 F.2d 420 (5th Cir.1970); *Skill v. Martinez,* 91 F.R.D. 498, 503 (D.N.J.1981).

The application for insurance plainly stated that insurance would not be issued until the insurer approved the application. In fact, paragraph 11 specifically provided in clear, unambiguous words that no insurance should take effect until the application has been approved and accepted in writing by the Trustee and "approved for coverage in writing by the insurer." Tripp testified

7. Apparently the check was submitted in support of the application because, if the application were accepted, coverage would be retroactive as requested by Blair to the date of the application.

8. Given that Manhattan presented sufficient evidence to justify submission of this case to the jury, and that the jury found for Manhattan

that Dr. Blair openly talked to him about his heart problem and he discussed with Blair the difficulties this would present in obtaining coverage and specifically remembered discussing the substance of the condition that the insurer must first approve coverage for it to be effective. Dr. Blair was not an ordinary layman; he was a medical doctor "familiar with medical terminology and his problem of course." Reviewing the record in this case, we are satisfied that Manhattan presented sufficient evidence to warrant submission of the issue of fact to the jury.

■ This does not end the matter because in their supplemental memoranda to us, counsel for plaintiff maintains that under *Easton v. Washington County Insurance Co.,* 391 Pa. 28, 137 A.2d 332 (1957), Manhattan's evidence could not be "clear and convincing" because it was not supported by testimony from two witnesses or from one witness and corroborating circumstances. In *Easton,* however, the court applied the two-witness rule only adjunctly to its basic proposition that "to obtain reformation of a contract in equity, or a variance of the terms of a contract at law, the moving party is required to show by clear, precise and indubitable evidence either fraud or mutual mistake." *Id.* at 37, 137 A.2d at 337. In *Easton,* the plaintiff-insured endeavored to alter the written contract of insurance by his oral testimony. The Supreme Court of Pennsylvania, therefore, entered judgment notwithstanding the verdict for the defendant insurance company on the ground that the insured, Easton, was the sole witness to testify to the alleged fraud or mistake. On such a record, neither the issue of a latent ambiguity nor the question of mutual mistake or fraud should have been submitted to the jury.

even under the demanding *Collister* standard, we need not reach the question of whether a standard more favorable to Manhattan than the *Collister* standard should have been applied. Thus, we do not necessarily agree, as suggested by note 1 of the dissent, that Manhattan's burden "must be measured by the Pennsylvania standard adopted in *Collister.*"

The inapplicability of *Easton* to this case is at once evident. The plaintiff here is not endeavoring to reform the contract of insurance. On the contrary, she fully relies on the terms and conditions of the application. Nor does the insurer here attempt to reform or attack the terms of the contract. The two-witness rule, if it has any vitality, applies only where a party affirmatively seeks to reform an instrument which he claims, through fraud, accident, or mistake, does not reflect the true intentions of the parties. Here, Manhattan in no way challenges the terms or conditions of the application.

In addition, even if the two-witness rule were applicable, Manhattan has satisfied it. Tripp's testimony is corroborated by the application and physician's statement disclosing a heart condition, and Tripp's notation thereon of "cardiac myopathy." Furthermore, as previously noted, the Act of May 28, 1913, P.L. 358, *see* n. 4, substantially abolished the rule except in cases where there is an attempt "to reform or overthrow a written instrument." *Easton* fell within that statutory exception because of the insured's attempt to reform the written policy by expanding its coverage.

More recently, the Pennsylvania Superior Court in *Donahue v. R.C. Mahon Co.,* 219 Pa.Super. 210, 280 A.2d 563 (1971), limited the rule to those *reformation* causes where fraud, accident, or mistake are alleged. The trial judge in *Donahue* had instructed the jury that any effort to modify the written contract for steel construction had to be established by clear and convincing evidence. Because he did not instruct them on the application of the "two-witness" rule, the trial judge therefore granted a motion for new trial. Although the Pennsylvania appellate court agreed that clear and convincing evidence was required to vary the terms of a written agreement by a subsequent oral agreement, it did not agree with the trial judge that he committed error by failing to instruct the jury on the two-witness rule.

The lower court was correct in charging that the evidence required to modify a written agreement by a subsequent oral agreement needs to be proved by evidence which is clear, precise and convincing. The requirement of two witnesses or one witness and corroborating circumstances, which was relied on by the lower court in its opinion, applies only to the proof needed to reform an instrument which through fraud, accident, or mistake does not reflect the original agreement or intention of the parties. See *Easton v. Washington County Insurance Company,* 391 Pa. 28, 137 A.2d 332 (1958).

*Donahue v. R.C. Mahon Co., supra,* 219 Pa. Super. at 219, 280 A.2d at 568.

We therefore conclude that what presently remains of the "two-witness" rule in Pennsylvania is at most limited to cases where one party seeks to reform or alter a written instrument on the basis of a subsequent oral modification, or because of fraud, accident, or mistake the written instrument does not represent the original intention of the parties. In the instant case, Manhattan does not seek to reform, alter, or modify the application but seeks to confirm it.

The order of the district court will be affirmed.

GARTH, Circuit Judge, dissenting:

My disagreement with the majority opinion is a narrow one, yet it is fundamental to this appeal. The majority correctly observes that the dispositive issue in this appeal is whether the defendant insurance company, as required by *Collister v. Nationwide Life Ins. Co.,* 479 Pa. 579, 388 A.2d 1346 (1978), established by clear and convincing evidence that Dr. Blair, the applicant, had no reasonable basis for believing that he was purchasing immediate insurance coverage (Maj. Op. 298). The majority, finding that Manhattan Life Insurance Company has met this burden, consequently affirms the district court's order which denied plaintiff a judgment notwithstanding the verdict, since the district court submitted the case to the jury on an instruction which invoked the "clear and convincing" burden of proof mandated by Pennsylvania law.

Thus, my disagreement is a threshold one: while I do not fault the charge in terms of *Collister* that the district court judge gave to the jury, it is my view that the district court judge erred in his initial decision to permit the jury to consider the proofs.

In order to make clearer my disagreement with the majority, it is helpful to identify those matters on which we do not disagree. Both the majority and I agree on the authorities that control this case. We both agree that under *Collister* the insurance company had to prove by clear and convincing evidence that Dr. Blair had no reasonable expectation of purchasing insurance that was effective immediately upon his signing the application and tendering the advance payment. I think we agree also that under Pennsylvania law [1] the standard of clear and convincing evidence is that: [2]

> [defendant's] witnesses must be found to be credible, that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct, weighty, and convincing as to enable the jury to come to a clear conviction without hesitancy, of the truth of the precise facts in issue.

*Easton v. Washington County Insurance Company,* 391 Pa. 28, 137 A.2d 332, 337 (1957). Finally, we agree that "whether the [defendant's] evidence met this standard and so justified the submission of [its] case to the jury is again a question of law for the court." *Id.* at 337.

The majority and I disagree, however, as to whether, at the time the evidentiary record was closed, Manhattan's showing met the clear and convincing evidence standard of Pennsylvania law. If Manhattan met this burden, then the majority is quite right that the district court's judgment should be affirmed. If, as I submit, Manhattan *did not meet* this burden, then the majority is in error and the judgment for the defendant should be set aside and judgment entered for the plaintiff.

Careful study of the record, and of *Collister, supra,* has convinced me that the proofs offered by Manhattan were insufficient, under *Collister* and *Easton, supra,* to allow submitting the case to the jury. The requirement of "clear and convincing evidence", as defined by Pennsylvania law, was not satisfied. [3] I would vacate the judgment for the defendant insurance company and direct that the district court judge enter a judgment notwithstanding the verdict for the plaintiff Margaret Blair.

The basis of my disagreement with the majority, therefore, lies in an assessment of the evidence before the district court when it submitted the case to the jury.

1. Under the facts of this case, it is apparent to me that Manhattan's burden must be measured by the Pennsylvania standard adopted in *Collister.* I do not understand the majority's analysis to be otherwise. I would point out, however, that the question whether sufficiency of evidence to reach the jury is a state or federal matter has not in general been settled, for cases where those standards clearly differ. *See Dick v. New York Life Ins. Co.,* 359 U.S. 437, 444–45, 79 S.Ct. 921, 926, 3 L.Ed.2d 935 (1959); *Mercer v. Theriot,* 377 U.S. 152, 156, 84 S.Ct. 1157, 1160, 12 L.Ed.2d 206 (1964). Heretofore this Circuit has found it unnecessary to determine whether a state standard of sufficiency, if clearly different from the federal standard, must be followed because of the *Erie* doctrine. *See Denneny v. Siegel,* 407 F.2d 433 (3d Cir. 1969). For an excellent presentation of the view that a federal standard should govern, see *Wratchford v. S.J. Groves & Sons Co.,* 405 F.2d 1061 (4th Cir.1969) (Haynsworth, C.J.) and

*Planters Mfg. Co. v. Protection Mutual Ins. Co.,* 380 F.2d 869 (5th Cir. 1967) (cited approvingly in *Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir.1969) (en banc) (adopting the rule that the federal standard applies) ). For a perceptive and persuasive response to these arguments see *Denneny, supra,* at 437–39 (Aldisert, J.).

2. In light of the fact that I find the standard as stated here has not been met, there is no need for me to discuss the majority's conclusion that the "two-witness rule" does not apply to the present case.

3. In *Collister* the Pennsylvania Supreme Court placed upon the *insurer,* not the insured, the burden of demonstrating that the provision had been explained to the insured and that the insured had understood its meaning. *See Collister, supra,* 388 A.2d at 1353–54.

## I.

In support of its holding that the defendant's evidence satisfied a "clear and convincing" standard of proof, the majority relies on the following: (1) paragraph 11 of the application unambiguously states that no insurance would be issued until the insurance company approved the application; (2) Mr. Tripp, the broker who processed Dr. Blair's application, had spoken to Dr. Blair about Blair's heart problem and the difficulties that condition presented in obtaining coverage; and (3) Tripp "specifically remembered discussing the substance of the condition that the insurer must first approve coverage for it to be effective." (Maj.Op. 302).

I read the record differently. First, although I admit that the language of paragraph 11 [4] is not ambiguous on its face, it should be noted that this term appeared, not on the face of the application, but on the back, as the eleventh of thirteen clauses. On the face of the application appeared the following notations:

"Waiting period: present employees: *NONE*" and "Requested effective date of Insurance *Sept. 15, 1975.*"

Thus, in my opinion, this application, despite the majority's characterization (*see* note 6, Maj. op.), is precisely the sort of "lengthy, complex, and cumbersomely written application[] ... [that] forces the consumer to rely upon the oral representations of the insurance agent," *Collister,* 388 A.2d at 1353, that the court in *Collister* was concerned with. That the language of paragraph 11 is not by itself dispositive, appears also from the fact that in the *Collister* case the relevant term of the policy was just as unambiguous as, if not more so than, this provision of Blair's policy, and that clause appeared *on the face* of the conditional receipt in capital letters. The *Collister* clause reads:

"NO INSURANCE WILL BECOME EFFECTIVE PRIOR TO POLICY DELIVERY UNLESS THE ACTS REQUIRED BY THIS RECEIPT ARE COMPLETED. NO AGENT OF THE COMPANY IS AUTHORIZED TO CHANGE ANY ACT REQUIRED."

*Collister, supra,* 388 A.2d at 1357 (Pomeroy, J., dissenting).

Therefore I see no relevant difference between the restrictive term of the *Collister* receipt and that of the Blair application. Both state that the insurance is not immediately effective. Despite such a provision, the Pennsylvania Supreme Court in *Collister* held that the application does not control the relationship between the insured and the insurer. The Supreme Court held that "the dynamics of the transaction viewed in its entirety" must determine that relationship. *Id.* 388 A.2d at 1354. The crucial factor in the *Collister* case was the advance payment of premium made by the insured—a circumstance identical to that which occurred in this case.[5]

The second factor on which the majority relies is Mr. Tripp's discussion with Dr. Blair about his heart problem. I suggest that, while this circumstance could have led to an inference that Blair's expectation of obtaining immediate coverage was not reasonable, such an inference necessarily had to be dispelled by: (1) the Medical Examiner's Report, which was submitted at the same time as the application, and which recommended that the insurer undertake the risk, and (2) the equivocality of Tripp's testimony and recollections.[6]

The third factor in the majority's analysis concerns the quality of Tripp's testimony.

> Courts must also keep in mind the obvious advantages gained by the insurer when the premium is paid at the time of application. An insurer should not be permitted to enjoy such benefits without giving comparable benefit in return to the insured.

*Collister, supra,* 388 A.2d at 1354.

4. Paragraph 11 reads:

"that no insurance ... shall take effect until this application has been approved and accepted in writing ... and insurance as specified in the Schedule has been approved for coverage in writing by the insurer." (App. 79(a) ).

5. The *Collister* court reasoned that the advance payment was the vital consideration in determining whether immediate insurance coverage had been afforded by the insurance company. It said:

6. Tripp testified:

"Q. Did you discuss these difficulties with him?
A. Yes. Not specifically, but I said it probably would be difficult."
App. 36a.

His testimony and recollections are best examined in connection with the final bit of evidence on which the majority depends in holding that the insurance company met its heavy burden. The majority states that Tripp "specifically remembered discussing the circumstance of the condition that the insurer must first approve coverage for it [coverage] to be effective." (Maj.Op. 302).

If the testimony of Mr. Tripp to this effect were "distinctly remembered" and the "details thereof narrated exactly" and "in due order" and if this testimony were "so clear, direct, weighty, and convincing as to enable the jury to come to a clear conviction, without hesitancy of the truth of the precise facts in issue," see Easton, supra, 137 A.2d at 337, then I would have no more difficulty with affirming the district court's order than the majority has. Tripp's testimony, however, is not of that quality. Rather, what Mr. Tripp said on direct, he contradicted on cross; what he seemed to remember during some part of his testimony, he could not recall in later portions.

On direct examination, when asked whether he had explained Paragraph 11 to Dr. Blair, Mr. Tripp replied:

Yes. I did not read the provision itself, but I discussed the elements of the provision completely as it so states, perhaps in different terms, but I got across the point that was stated in there, yes.

App. 41a.

Yet, on cross examination, the following occurred:

Q In connection with taking an application for an applicant for an insurance policy do you make it a practice to advise an applicant that he is or is not insured?

A Never.

Q The fact that you advised Dr. Blair in this case that he was not insured?

A I did not.

App. 51a.

Of course, the very "point" which, under Collister, Mr. Tripp was required to "get across" in explaining Paragraph 11, was that Dr. Blair was not insured until the policy was approved. It is this type of non-specific and contradictory testimony that is the antithesis of Pennsylvania's requirement that the facts be "distinctly remembered and the details thereof narrated exactly and in due order." See In re Estate of LaRocca, 411 Pa. 633, 192 A.2d 409, 414 (1963).

It also emerged, on cross examination, that Mr. Tripp did not "distinctly remember" the details of the transaction with Dr. Blair. He did not remember requesting a physician's statement, nor did he remember including the physician's statement with the application. He did not remember changing the amount of the requested insurance. The documents, however, revealed that he had done so. Transcript 58–66. Even on direct examination, Mr. Tripp testified that he did not recall the other policies he had sold Source, (Dr. Blair's employer), since "this case is around six years old, and my memory is not that good, unfortunately." App. 54a–62a.

Reading Mr. Tripp's testimony alone, or in combination with the application and medical certificate, I conclude that at the most, the insurance company may have proved that Dr. Blair had no reasonable expectation of immediate insurance, but if it did so, it did so by no more than a "preponderance of evidence." But, under Pennsylvania law, proof by a preponderance is not enough. The proof must meet Pennsylvania's "clear and convincing" test. A review of the record demonstrates conclusively that Manhattan's burden of proof by "clear and convincing evidence," was simply not carried. Thus, the district court judge should not have given this case to the jury. But, having once submitted it to the jury, the district court should then have granted judgment notwithstanding the verdict on Mrs. Blair's motion.

Collister holds that where an advance premium is paid the insurance policy is in immediate force. This is so, even though the application for insurance or the condi-

tional receipt for the premium, unambiguously provides that the policy, to be effective, must first be approved by the home office. We may not question this Pennsylvania doctrine, even though, were we writing on a clean slate, we might have reached a different result. *Collister* also holds, as I have pointed out, that the burden of proving explicit explanation of such a restrictive clause is on the insurance company. In this court, we may not question that doctrine either.

In both *Collister* and this case, advance premium payments were made and the attempt to delay the effective date of the respective policies were identical. In *Collister,* the attempt by the insurance company was held to be unsuccessful. Here, however, in the face of *Collister,* the majority has held that Manhattan's attempt will succeed, even though it acknowledges that our court's mandate is to apply the substantive law of Pennsylvania which is expressed in *Collister.*

Following *Collister,* I cannot agree that, under the most liberal reading of the record in this case, Manhattan, the insurance company, met its burden of showing by clear and convincing evidence that Dr. Blair did not have a reasonable expectation of immediate insurance coverage. I therefore respectfully dissent.