Gerald LEVINSON

v.

PRENTICE–HALL, INC., Appellant.

No. 88–5637.

United States Court of Appeals,
Third Circuit.

Argued Jan. 26, 1989.

Decided Feb. 14, 1989.

Marvin E. Frankel (argued), Daniel A. Rizzi, Kevin B. Leblang, Kramer, Levin, Nessen, Kamin & Frankel, New York City, for appellant.

Neil Mullin (argued), Smith, Mullin & Kiernan, West Orange, N.J., for appellee.

Before GIBBONS, Chief Judge, and SEITZ and GREENBERG, Circuit Judges.

OPINION OF THE COURT

GREENBERG, Circuit Judge.

Defendant Prentice–Hall, Inc. appeals following the denial of its post-trial motions after a jury trial in which a verdict was returned in favor of plaintiff Gerald Levinson in this action under the New Jersey Law Against Discrimination, N.J.Stat.Ann. § 10:5–1 *et seq.* (West 1976), and the public policy of the State of New Jersey. The district court had diversity jurisdiction un-

der 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

The facts of the case may be summarized as follows. Levinson, an attorney, was employed by Prentice–Hall in 1968 as an editor in its federal tax department while he was still in law school. In 1969 he was diagnosed as having multiple sclerosis. In April 1973 Levinson resigned from Prentice–Hall to go into private practice but he found this work too difficult because of his condition. He thus reapplied for a position at Prentice–Hall and was rehired in June 1973 as an editor in Prentice–Hall's pension department. For some years his relationship with his employer was essentially unremarkable with regard to the issues in this case in that he was given regular salary increases and does not claim to have been the victim of discrimination in his work assignments. Further, it appears that he was a competent editor. It does seem, however, that on some occasions he was subject to ridicule because of his handicap. In 1979 Levinson received a promotion to Supervisory Editor I, the lowest supervisory position at Prentice–Hall.

In 1979 a vacancy developed in the position of Supervisory Editor II in the pension department, a position also referred to as department head. At that time Jack Klaus, a Supervisory Editor I in another department, was designated Supervisory Editor II or department head in the pension department. There is evidence that during the time that Klaus was department head, Levinson performed functions ordinarily the responsibility of the department head and there is evidence that Levinson's performance was outstanding during this time. In 1984 Elizabeth Buchbinder, who had been a staff editor, was promoted to Supervisory Editor I, the same title held by Levinson, and in 1985 she became the department head. Thus, Levinson was by-passed for the promotion even though he had more seniority than Buchbinder in the position immediately below department head.

Buchbinder, however, left Prentice–Hall in 1985, creating a third vacancy in the department head position. In 1986 Ellen Lyons was designated department head so that Levinson was again passed over for promotion. He is, however, still employed by Prentice–Hall.

On July 9, 1985 Levinson brought this action, alleging claims under the New Jersey Law Against Discrimination and New Jersey public policy because of Prentice–Hall's failure to promote him and because of the ridicule to which he had been subjected. He also asserted a common law contract claim predicated on Prentice–Hall's alleged failure to follow the procedures in its employment manuals in failing to promote him. Levinson sought compensatory and punitive damages and included a claim for emotional distress. Although the complaint was filed before the last vacancy in the department head position was filled, this action has included claims by reason of Levinson's having been passed over for that position to which Prentice–Hall has raised no procedural objections, at least on this appeal.

At the end of Levinson's case, Prentice–Hall moved to dismiss the complaint, arguing that the "weight of the evidence" showed that Prentice–Hall did not intend to discriminate against Levinson on the basis of his multiple sclerosis. In addition, Prentice–Hall moved to dismiss the claim for emotional distress because it had not been shown that it had acted in an extreme, outrageous, intentional and reckless manner. It moved to dismiss the contract claim on the basis that the manuals on which Levinson relied were merely "general expressions of policy" and gave him no entitlement to promotion. Finally, it moved to dismiss the claim for punitive damages as "aggravated malice" had not been shown. The motions were all denied. The judge indicated, however, that the jury would deliberate in stages. First, it would determine if there was a cause of action and, if so, the compensatory damages. If Levinson was successful at that stage, the jury would then consider the issue of punitive damages.

At the end of the presentation of all the evidence, the judge in conference entertained motions and discussed the proposed charge with the attorneys. Prentice–Hall

urged that a recovery for front pay should not be allowed as its computation would be "speculative." The parties then discussed punitive damages. Levinson indicated that he wanted a charge permitting him to recover for Prentice–Hall's alleged violation of New Jersey public policy in discriminating against him. While this basis for recovery would duplicate his claim under the Law Against Discrimination, he sought it to protect his position in the event that the then recently decided case of *Jackson v. Consolidated Rail Corp.*, 223 N.J.Super. 467, 538 A.2d 1310 (App.Div.1988), in which the Appellate Division of the Superior Court of New Jersey indicated that punitive damages could be recovered in an action under the Law Against Discrimination, was reversed by the Supreme Court of New Jersey.[1] The court ultimately did give the charge. At the end of the conference Prentice–Hall indicated that it wanted the record to reflect that it made "motions to dismiss each and every count—strike each and every count in the complaint." The judge then said that he would deny the motions "except that I will again take arguments on whatever arguments you have following the jury going out. We can sit around and argue that after. Whatever the jury does, I may then do something with it."

On the following day, the parties summed up and the court charged and submitted the case to the jury on a written verdict form. The jury found that discrimination was a substantial or determinative factor in Prentice–Hall's decision not to promote Levinson and that its manuals created an implied contract with its employees which was violated when Levinson was not promoted. It also found that the discrimination was against the public policy of New Jersey. The jury awarded Levinson $39,561 for wages and benefits already lost, $117,623 for wages and benefits to be lost in the future, and $100,000 for pain and suffering attributable to the discrimination. Thus, the compensatory damages amounted to $257,184.

The trial was then recessed for several days, giving the parties an opportunity to file additional memoranda. Prentice–Hall filed a letter memorandum asserting that "no evidence of aggravated malice exists in the present matter to justify the imposition of punitive damages" and "accordingly, the issue of punitive damages should not be submitted to the jury." The memorandum also addressed the content of the proposed charge, stating that:

> [i]n connection with the charge to the jury on the punitive damages issue, the court should make it clear to the jury that any sympathy for one party and dislike of another should not enter their consideration. The jury should also be instructed that any award on punitive damages must bear a reasonable relationship to the compensatory damages award. *Fischer v. Johns–Manville Corp.*, 103 N.J. 643, 673 [512 A.2d 466] (1986).

In the judge's charge he explained that the jury in its discretion could award punitive damages if Prentice–Hall acted maliciously or wantonly or oppressively, and he defined those terms. He indicated that if the jury awarded punitive damages, they must "be fixed with calm discretion and sound reason, and must never be either awarded or fixed in amounts because of any sympathy or bias or prejudice with respect to any party in the case."

At the conclusion of the charge Prentice–Hall objected that:

> the only thing that concerns me about the charge is that your Honor didn't charge that under the case of *Fischer v. Johns–Manville Corporation*, 103 N.J. 643 [512 A.2d 466], that any award of punitive damages should bear reasonable relationship to actual injury and should not exceed that. I think that leaving that out could potentially cause a problem.

The judge, however, did not adopt this suggestion, indicating that he had given the "boiler-plate" and was going to leave it at that. The jury returned a verdict of $2,300,000 for punitive damages.

1. This count was set forth in the complaint but had been dismissed on a summary judgment.

Prentice–Hall subsequently moved for a judgment notwithstanding the verdict or for a new trial. Alternatively, it sought a remittitur. The judge decided this motion in an opinion of July 22, 1988. He said that the jury could have concluded that Prentice–Hall intentionally discriminated against Levinson. However, there was no basis for the verdict on the contract theory as Prentice–Hall's manuals did not constitute a promise that employees would be promoted and thus gave no basis for liability under *Woolley v. Hoffmann–LaRoche, Inc.*, 99 N.J. 284, 491 A.2d 1257, *modified*, 101 N.J. 10, 499 A.2d 515 (1985). He further held that punitive damages were allowable as the jury could have found that Prentice–Hall had engaged in "egregious misconduct" and he set forth the evidence at length to support that conclusion. He also found that the verdict was not against the weight of the evidence and that there were no errors at trial to warrant a new trial.

The judge further indicated that a new trial was not justified on the issue of punitive damages. He recognized that he had not charged that the punitive damages must have a reasonable relationship to the actual damages but he said that the jury nevertheless had been adequately instructed as it had been told that if it awarded punitive damages it must act with "calm discretion and sound reason." He refused to grant a remittitur as he did not find the punitive damages award grossly excessive. An appropriate order was entered on July 25, 1988 and this appeal followed.

On this appeal Prentice–Hall's contentions are rather limited. It does not challenge the finding that it was guilty of discrimination in failing to promote Levinson, thus conceding its liability for compensatory damages. Further, it accepts the verdict for lost wages and benefits and for pain and suffering. It does contend, however, that punitive damages may not be awarded under the Law Against Discrimination, and in any event were not available under the facts proven here. It further

asserts that the charge on punitive damages was erroneous and that the verdict awarding them was excessive. Finally, it urges that the court erred in allowing the award of front pay to stand.

Levinson raises procedural objections to the appeal. He urges that Prentice–Hall cannot appeal from the denial of the judgment notwithstanding the verdict on punitive damages, as it failed to move for a directed verdict on punitive damages at the end of all the evidence. *See, e.g., Orlando v. Billcon Int'l, Inc.*, 822 F.2d 1294, 1298 (3d Cir.1987); *Bonjorno v. Kaiser Aluminum & Chemical Corp.*, 752 F.2d 802, 814 (3d Cir.1984), *cert. denied*, 477 U.S. 908, 106 S.Ct. 3284, 91 L.Ed.2d 572 (1986). He further points out that in its trial brief Prentice–Hall said that "[u]nder the LAD [Law Against Discrimination], punitive damages are appropriate only when an employer acts with 'aggravated malice' and his conduct is found to be wantonly reckless or malicious." He also asserts that Prentice–Hall cannot challenge the award of front pay as it never moved for a judgment notwithstanding the verdict on that issue.

Prentice–Hall replies that, in effect, it made a motion for a directed verdict by moving to dismiss and strike, though it did not use the term "directed verdict" or refer to Fed.R.Civ.P. 50.[2] It further points out that the district judge was not misled on the point as he entertained its motion for a judgment notwithstanding the verdict on the merits, without suggesting that it was procedurally barred even though Levinson urged that it was. It also asserts that at various times in the trial court it did urge that punitive damages are unavailable under the Law Against Discrimination.

Our scope of review in this matter is plenary on the legal question of whether punitive damages are available under the Law Against Discrimination. *United States v. Adams*, 759 F.2d 1099, 1106 (3d Cir.), *cert. denied*, 474 U.S. 906, 971, 106

---

**2.** It should be noted that at trial Prentice–Hall was not represented by the firm of attorneys representing it on this appeal.

S.Ct. 275, 336, 88 L.Ed.2d 236, 321 (1985). We review the denial of the motion for the judgment notwithstanding the verdict to determine whether the evidence and justifiable inferences most favorable to Levinson afforded a rational basis for the verdict. *Orlando v. Billcon Int'l, Inc.*, 822 F.2d at 1299. Our scope of review on the denial of the motion for a new trial and the ruling on the request to charge is whether the judge abused his discretion in these rulings. *See Link v. Mercedes–Benz of North America,* 788 F.2d 918, 921–22 (3d Cir.1986).

Although it is extremely doubtful that Prentice–Hall's motions were sufficiently specific to preserve its right to move for a judgment notwithstanding the verdict on the issues raised on this appeal, we see no profit in making a definitive ruling on this point, as it did preserve the right to object to the content of the charge to the jury on punitive damages, and it is clear that it has no other grounds for relief. Further, the purpose of the requirement that a party move for a directed verdict before moving for a judgment notwithstanding the verdict is to provide the opposing party an opportunity to cure defects in his proofs which could not be remedied except by a new trial if first raised on a motion for a judgment notwithstanding the verdict. *Orlando v. Billcon Int'l, Inc.*, 822 F.2d at 1298; *Acosta v. Honda Motor Co.*, 717 F.2d 828, 831–32 (3d Cir.1983).[3] Here the principal point made by Prentice–Hall is that as a matter of law punitive damages could not be recovered in this action, as they are simply not available under the Law Against Discrimination. If Prentice–Hall is correct in this contention, no additional opportunity to present proofs could have aided Levinson on this issue. Thus, we will consider this appeal on the merits. *See Bonjorno v. Kaiser Aluminum & Chemical Corp.*, 752 F.2d at 814.

As we have indicated, Prentice–Hall's primary issue on appeal is that punitive damages are not allowable under the New Jersey Law Against Discrimination. It is clear that no provision in the Law Against Discrimination expressly authorizes the recovery of punitive damages. *See* N.J.Stat.Ann. § 10:5–13 (West Supp. 1988). Thus, we must anticipate whether the Supreme Court of New Jersey would allow punitive damages in an action under the Law. *Radwan v. Beecham Laboratories*, 850 F.2d 147, 151 (3d Cir.1988).

In this regard, we first point out that nothing in the Law expressly limits recoveries to compensatory damages. Indeed, in certain sections the Law expressly provides for penalties and treble damages. N.J. Stat.Ann. §§ 10:5–14.1a and 10:5–17 (West Supp.1988). Thus, we may infer that, at least in some circumstances, the Law does more than merely provide for an injured party's recovery of his actual losses.

But more fundamental to our conclusion that punitive damages are allowable under the Law is the characterization by the Supreme Court of New Jersey of acts violating the Law, and its rulings as to when, generally, punitive damages may be awarded. In *Andersen v. Exxon Co.*, 89 N.J. 483, 491, 446 A.2d 486, 490 (1982), on an appeal by an employer from an administrative order issued in a proceeding under the Law Against Discrimination involving discrimination against an employee by reason of physical handicap, the court said that "[e]mployment discrimination due to sex, race or any other invidious classification is peculiarly repugnant in a society that prides itself in judging each individual by his or her merits" and "[o]ur Court has repeatedly emphasized the strong public policy of New Jersey against employment discrimination." Thus, we feel certain that the court would in some cases find that employment discrimination was wantonly reckless or malicious conduct reflecting intentional wrongdoing in the sense of an evil-minded act or a disregard of the rights of another, the type of conduct which it has held may justify an award of punitive damages. *See Fischer v. Johns–Manville Corp.*, 103 N.J. 643, 656, 512 A.2d 466, 472 (1986); *see also Leimgruber v. Claridge Assoc's, Ltd.*, 73 N.J. 450, 454, 375 A.2d 652, 654 (1977) (holding that punitive damages may be awarded when the wrong-

---

**3.** It is also intended to preserve a party's Seventh Amendment right to a jury trial.

doer's conduct is "especially egregious" in order to punish the offender for aggravated misconduct and to deter the conduct in the future). Furthermore, the Appellate Division of the Superior Court of New Jersey, in a persuasive though not binding decision, noted that in an appropriate case punitive damages are allowable under the Law Against Discrimination. *See Jackson v. Consolidated Rail Corp.*, 223 N.J.Super. at 481–82, 538 A.2d at 1319.

In reaching our conclusion, we have not ignored Prentice–Hall's argument that cognate statutes in other jurisdictions have not been construed to allow punitive damages. *See, e.g., Protos v. Volkswagen of America*, 797 F.2d 129, 138 (3d Cir.), *cert. denied*, 479 U.S. 972, 107 S.Ct. 474, 93 L.Ed.2d 418 (1986). Rather, based on our not inconsiderable knowledge of the Supreme Court of New Jersey, we think that it would not follow those cases. If that court would uphold an award of punitive damages against a trespasser cutting off the tops of trees, as it did in *Leimgruber*, we cannot conceive that in an appropriate case it would not allow punitive damages in an action under the Law Against Discrimination. We are quite certain that the court would not think that an entity which maliciously and intentionally injures a person is less deserving of punishment than an entity which injures a tree.

■ We also conclude that there is no merit to Prentice–Hall's contention that the facts of this case cannot support an award of punitive damages, though we do not suggest that in every employment discrimination case in which there is a basis for compensatory damages it follows that punitive damages are also available. The record supports a finding that Levinson was passed over for promotion three times by reason of his handicap. Furthermore, certain performance appraisals of his work were extremely complimentary, though after he complained about his treatment his evaluations were not so positive. Significantly, Levinson had been the subject of ridicule. Overall, we agree with the conclusion of the district judge, as set forth in his opinion on Prentice–Hall's post-trial mo-

tions, that "there was clearly enough evidence for the issue of punitive damages to be presented to the jury" and "the jury's finding of egregious misconduct on the part of Prentice–Hall is well supported by the record."

■ Nor do we regard Prentice–Hall's argument with respect to front pay as substantial. It concedes that Levinson is entitled to be compensated for any future losses of earnings because of the unchallenged finding that he was discriminatorily denied a promotion. But it contends that the jury's verdict awards him damages, reduced to current value, for losses extending many years in the future, and that he will thus retain front pay even if he quits or dies or is promoted. It urges that the purpose of a front pay award is to make the victim whole, and that in a nonpromotion case the front pay remedy should award the employee the additional amount he would have received over his actual salary except for the discrimination "but only until the employee is promoted to or declines to accept a comparable position." In support of this argument, Prentice–Hall cites nonjury cases under Title VII of the Civil Rights Act of 1964. *See, e.g., King v. Staley*, 849 F.2d 1143 (8th Cir.1988); *Spears v. Board of Ed.*, 843 F.2d 882 (6th Cir.1988).

The difficulty with Prentice–Hall's position is that this case, unlike *King* and *Spears*, was tried to a jury under state law with the potential remedy to be an award of money damages. Prentice–Hall does not contend that it suggested to the trial court that the front pay issue be resolved by the judge in some equitable fashion borrowing procedures from Title VII law. Accordingly, this case on the issue of front pay simply involved a not unusual determination of whether there would be pecuniary losses in the future attributable to the defendant's conduct and, if so, the extent and current valuation of the losses. While, of course, there are uncertainties in determinations of this kind, they are probably made in various contexts in the New Jersey courts on an almost daily basis. *See, Theobold v. Angelos*, 40 N.J. 295, 304–05, 191

A.2d 465, 469–70 (1963); *see also Kozlow-ski v. Kozlowski*, 80 N.J. 378, 387, 403 A.2d 902, 908 (1979). Thus, it is not surprising that Prentice–Hall cites no cases at all from the New Jersey courts on the front pay issue.

■ Prentice–Hall's issue relating to the charge to the jury has merit. Prentice–Hall made a timely request under Fed.R.Civ.P. 51 that the judge charge that "any award on punitive damages must bear a reasonable relationship to the compensatory damages award" and it supported the request with a citation to *Fischer v. Johns-Manville Corp.*, 103 N.J. at 673, 512 A.2d at 482, where the court said: "[p]unitive damages should bear some reasonable relationship to actual injury, but we have consistently declined to require a set numerical ratio between punitive and compensatory damages." When the judge failed to deliver the requested charge, Prentice–Hall objected before the jury retired to consider its verdict, and did so distinctly, therefore preserving its rights under Fed.R.Civ.P. 51. *See Bowley v. Stotler & Co.*, 751 F.2d 641, 646–48 (3d Cir.1985). The judge, however, would not charge further, explaining that he would leave the charge at the "boilerplate."

There is no doubt but that the requested charge should have been given. While Levinson urges that the "proposed charge was a misstatement of the law" because it said "that the award of punitive damages 'should not exceed' the 'actual injury' damages" he is simply wrong. Levinson is obviously confusing Prentice–Hall's request to charge with its objection to the charge as actually given. The request was that punitive damages bear a reasonable relationship to the compensatory damages awarded and thus, under *Fischer*, did not misstate the law. It is perfectly obvious, particularly in view of Prentice–Hall's citation to *Fischer*, that when it objected stating that the judge did not charge that "any award of punitive damages should bear reasonable relationship to actual injury and should not exceed that," the reference to "not exceed that" was to the reasonable relationship to the injury and not to the

amount of the damages. The words "not exceed that" were not in the request to charge. We conclude that it cannot possibly be held that Prentice–Hall urged that the compensatory damages should serve as a cap on the quantum of punitive damages.

■ In considering whether the judge's error in refusing the requested charge requires that a new trial be awarded, we view the charge as a whole and determine whether, in the light of all the evidence, it fairly and adequately submitted the issues to the jury. *Link v. Mercedes–Benz of North America*, 788 F.2d at 926; *Walters v. Mintec/Int'l*, 758 F.2d 73, 76 (3d Cir. 1985). The charge gave very little guidance to the jury on how to calculate punitive damages. The jury was told that its job was either not to award punitive damages "or to award punitive damages in a sum that you, in your discretion think proper." It was told that punitive damages could be awarded if Prentice–Hall proximately caused actual injury or damage to Levinson by an act or omission maliciously or wantonly or oppressively done, and that the amount would be the sum the jury thought "proper." The court defined what constituted a malicious, wanton or oppressive act. The judge said that if punitive damages were to be awarded, they "must be fixed with calm discretion and sound reason, and must never be either awarded or fixed in amount because of any sympathy or bias or prejudice with respect to any party in the case." He emphasized that bias or prejudice must be set aside, that the jurors were not to be governed by sympathy, prejudice or public opinion, and that they must be careful, impartial and just.

Reading the charge as a whole, it simply cannot be concluded that the jury understood that the quantum of punitive damages were to have any relationship to Levinson's injury, let alone some reasonable relationship. This failure left the jury without guidance on the fundamental question of how to fix the damages. *Bowley v. Stotler & Co.*, 751 F.2d at 647. It only knew that whatever it did was to be done calmly and without bias. Thus, the judge abused his discretion in refusing the

charge and in denying the motion for the new trial to the extent that the motion was predicated on his refusal to give a *Fischer* charge. Of course, the error in the charge had no effect on Levinson's right to recover punitive damages. It only related to their computation, and thus a new trial will not resurrect the question of Prentice–Hall's liability for punitive damages.

We recognize, of course, that the Supreme Court of New Jersey has indicated that a standard relating the quantum of punitive damages to the injury inflicted and the cause of the injury "does not provide much meaningful guidance for setting the amount of the award," *Leimgruber v. Claridge Assoc's, Inc.*, 73 N.J. at 457, 375 A.2d at 656. Nevertheless, it is better than nothing, and nothing is what the jury had to guide it here when it fixed punitive damages.

Levinson urges that if we find error in the charge we should regard it as harmless, since "no prejudice resulted from the charge," "because, in fact, the jury arrived at a reasonable relationship between punitive damages and compensatory damages here." He then indicates that the ratio of punitive to compensatory damages here was 8.9 to 1.0 and in *Leimgruber v. Claridge Assoc's, Inc.*, the court approve a higher ratio. Here, however, the compensatory damages were a total of $257,184 and the punitive damages were $2,300,000. In *Leimgruber* a slightly higher ratio of punitive to compensatory damages was upheld, but inasmuch as the compensatory damages were $1,700 and the punitive damages were $16,500, the case is of little assistance to us, given that the Supreme Court of New Jersey has recognized that when particularly egregious conduct generates minimal compensatory damages, "higher punitive damages would be justified than when substantial compensatory damages are awarded." *Fischer*, 103 N.J. at 673, 466 A.2d at 482.

In fact there are indications from the reported opinions that the ratio of punitive damages to compensatory damages in this case, which involved substantial compensatory damages, may have been unusual. Thus, in *Fischer*, there was an award of $86,000 in compensatory damages and $300,000 in punitive damages. In *Erickson v. Marsh & McLennan Co.*, 227 N.J.Super. 78, 545 A.2d 812 (App.Div.1988), the plaintiff recovered $250,000 in compensatory and $750,000 in punitive damages. In *Jackson v. Consolidated Rail Corp.*, 223 N.J.Super. 467, 538 A.2d 1310, the award was $600,000 in compensatory damages and $1,000,000 in punitive damages. While we recognize that *Erickson* and *Jackson* were reversed, and that the conduct of the defendants in the three cases we have cited differed from that of Prentice–Hall, nevertheless the cases are instructive on what a jury which fixes substantial compensatory damages may think is a reasonable award of punitive damages. While we have not attempted to survey all the New Jersey cases to ascertain the relationship of compensatory to punitive damages, we have not deemed that necessary as the opinions we have considered amply demonstrate that the error here cannot be regarded as harmless. Thus, it would be inconsistent with substantial justice not to grant a new trial. Fed.R.Civ.P. 61.

Prentice–Hall's remaining contention is that the gross excessiveness of the punitive damage award requires a new trial. In view of our result, this point is moot and it need not be reached.

Our final task is to set out guidelines to govern the new trial, which is to be held solely to fix the amount of punitive damages. Levinson obtained a verdict for liability for the unlawful discrimination on statutory grounds under the Law Against Discrimination and New Jersey public policy. *See Erickson v. Marsh & McLennan Co.*, 227 N.J.Super. at 84–85, 545 A.2d at 815. Thus, at the trial the jury will be instructed that Levinson recovered an award of compensatory damages on both bases and will be told the amount of the award and its constituent elements. The jury, nevertheless, will fix only a single award of punitive damages. Further, it will be told that the quantum of punitive damages will not be enhanced by reason of the circumstance that there were dual bases for the recovery. While the parties set-

tled the amount of attorney's fees allowable under N.J.Stat.Ann. § 10:5–27.1 (West Supp.1988), no reference to this shall be made to the jury as *Fischer* indicates that the punitive damages should have some reasonable relationship to actual injury. We think that injury relates to losses attributable to a defendant's conduct rather than to expenses to recover for the losses. This direction, however, will not preclude the court from making an appropriate response if the jury inquires about attorney's fees. The jury will be instructed that it must accept the earlier findings regardless of its own views. Finally, the jury will be instructed that it must return a verdict in some amount for punitive damages against Prentice–Hall.

To the extent that the order of July 25, 1988 denied Prentice–Hall's motion for a judgment notwithstanding the verdict, it will be affirmed. The order denying it a new trial will be reversed. The matter will be remanded to the district court for a new trial and further proceedings consistent with this opinion. The parties will bear their own costs of this appeal.