624 A.2d 632

DENNIS JOHNSON, PLAINTIFF, v. RYDER
TRUCK RENTALS, INC., DEFENDANT.

Superior Court of New Jersey
Law Division Union County

Decided January 6, 1993.

*Randy T. Pearce* for plaintiff (*Pearce & Massler,* attorneys).

*Robert H. Simandl* for defendant (*Simandl & Gerr,* attorneys).

MENZA, J.S.C.

The defendant moves *in limine* to dismiss the plaintiff's claim for punitive damages.[1]

The novel question presented is whether a jury may award punitive damages based solely on a violation of the New Jersey Law Against Discrimination ("NJLAD"), *N.J.S.A.* 10:5–1 to –42.

The plaintiff, a former employee of the defendant corporation, brought this action for wrongful discharge, alleging race and age discrimination in violation of the NJLAD, and seeking compensatory and punitive damages. The defendant contends that the plaintiff cannot recover punitive damages merely by offering evidence that the defendant violated the NJLAD, but that it also must set forth other evidence which demonstrates that the violation was the result of actual malice and reckless indifference to the plaintiff's rights. The defendant argues that, because the plaintiff has no such proofs, the court must dismiss his claim for punitive damages. The plaintiff disagrees, arguing that he need only prove that he was a victim of discrimination and that no other proofs are required to warrant the imposition of punitive damages.

It is well settled law in New Jersey that punitive damages may be awarded under the NJLAD. In *Jackson v. Consolidated Rail Corp.*, 223 *N.J.Super.* 467, 538 *A.*2d 1310 (App.Div.1988), an employee brought an action for wrongful discharge against his employer alleging that he was terminated because of race in violation of the NJLAD. The court held that the defendant's conduct was egregious and that the issue of punitive damages should have been presented to the jury:

> This suit was premised on wrongful discharge under the state and federal Constitutions as well as the Law Against Discrimination, and punitive damages may be awarded where appropriate for improper discharge in violation of the constitution. They may also be awarded for improperly motivated policy reasons, ... or for violation of an individual's federal civil rights . ."

---

[1] This opinion is an elaboration of the one made by the court at the time of trial.

[*Id.* at 482, 538 *A.*2d 1310 (citations omitted).]

However, while the *Jackson* court concluded that there was sufficient evidence in the record for the issue of punitive damages to be presented to the jury, the court did not decide the issue of whether punitive damages are available in all NJLAD cases.[2]

Similarly, the Third Circuit has held that punitive damages may be awarded under the NJLAD in appropriate cases. In *Levinson v. Prentice-Hall Inc.*, 868 *F.*2d 558 (3d Cir.1989), the plaintiff brought an action alleging discrimination on the basis of handicap and was awarded compensatory and punitive damages by the jury. The defendant moved for judgment notwithstanding the verdict, and in the alternative, for a new trial, contending that New Jersey law did not allow an award of punitive damages. The court concluded that punitive damages were allowed under the NJLAD and denied the motion. In doing so, it stated:

> [F]undamental to our conclusion that punitive damages are allowable under the Law is the characterization by the Supreme Court of New Jersey of acts violating the Law, and its rulings as to when, generally, punitive damages may be awarded. In *Andersen v. Exxon Co.*, 89 *N.J.* 483, 491, 446 *A.*2d 486, 490 (1982), on an appeal by an employer from an administrative order issued in a proceeding under the Law Against Discrimination involving discrimination against an employee by reason of physical handicap, the court said that "[e]mployment discrimination due to sex, race or any other invidious classification is peculiarly repugnant in a society that prides itself in judging each individual by his or her merits" and "[o]ur Court has repeatedly emphasized the strong public policy of New Jersey against employment discrimination." Thus, we feel certain that the court would in some cases find that employment discrimination was wantonly reckless or malicious conduct reflecting intentional wrongdoing in the sense of an evil-minded act or a disregard of the rights of another, the type of conduct which it has held may justify an award of punitive damages.

[*Id.* at 562.]

No New Jersey court has addressed the precise issue presented in this case, which is whether a violation of the NJLAD constitutes willful and wanton conduct which, in and of itself,

---

[2] The plaintiff in *Jackson* alleged aggravating circumstances, including the use of derogatory racial epithets by supervisory personnel. *See Jackson, supra,* 223 *N.J.Super.* at 475, 538 *A.*2d 1310.

supports a claim for punitive damages. However, the federal district court in *Weiss v. Parker Hannifan Corp.*, 747 *F.Supp.* 1118 (D.N.J.1990), decided that a plaintiff must show more than a violation of the statute to be entitled to punitive damages. In holding that the plaintiff was entitled to compensatory damages under the New Jersey Law Against Discrimination, but not to punitive damages, the court stated:

> Like any other case where punitive damages are available, punitive damages should only be awarded under the NJLAD in exceptional cases.... In order for punitive damages to be awarded, the defendant's conduct must have been wantonly reckless or malicious. Under New Jersey law, the exceptional nature of a given case and the wanton or malicious nature of the defendant's conduct are questions for the finder of fact.

[*Id.* at 1135 (citations omitted).]

Nevertheless, the court determined that the case was not exceptional, and that the issue of punitive damages should not go to the jury. The court reasoned:

> It should be remembered that punitive damages are intended to punish wrongdoers, not to enrich victims. In this regard, we note that the plaintiffs are not entitled to punitive damages simply because the defendant's officials acted wrongly and intentionally. By its very nature, a charge of religious discrimination embodies ideas of intent and wrongdoing that seem to fit the ordinary definition of wanton or malicious conduct. However, it follows that a plaintiff must show more than the minimum conduct necessary to prove the underlying cause of action before an award of punitive damages becomes appropriate. If such were not the case, punitive damages would be awarded, even required, whenever a party proved a discrimination claim under the NJLAD.

[*Id.* at 1136 (citations omitted).]

In *Jones v. Rivers*, 732 *F.Supp.* 176 (D.D.C.1990), the federal district court applied a similar rationale to claims for punitive damages based on wrongful discharge in violation of the Civil Rights Act, 42 *U.S.C.A.* § 1983. In *Jones*, a female employee brought a sex discrimination action against her employer, alleging violations of Title VII and § 1983. In holding that the plaintiff was entitled to compensatory damages for therapy and emotional distress, but not punitive damages, the court stated:

> Punitive damages may be awarded in § 1983 actions, and they can be an appropriate means of punishing discriminatory conduct and "deterring defendants from

future racially discriminatory actions." However, plaintiff here has not shown that defendant Rivers "acted in such an outrageous or wanton or oppressive manner in deliberate disregard for the rights of others," to warrant punitive damages. While his discriminatory conduct was unquestionably deplorable, it was not such "reckless or callous indifference to the federally protected rights of others," as to call for the extreme monetary sanction demanded by plaintiff.

[*Id.* at 178 (citations omitted).]

Thus, according to the *Jones* court, unlawful discrimination does not, by itself, rise to the level of egregious conduct which supports a claim for punitive damages.

This court disagrees. In enacting the NJLAD, the New Jersey Legislature expressed a strong public policy in protecting the State's residents against the practice of discrimination, which as the Legislature declared, "threatens not only the rights and proper privileges of the inhabitants of this state, but menaces the institutions and foundations of a free democratic state." *See Finding and Declaration of Legislature, N.J.S.A.* 10:5–3. In 1990, the NJLAD was amended. It now provides:

The Legislature further finds that because of discrimination, people suffer personal hardships, and the State suffers a grievous harm. The personal hardships include: economic loss; time loss; physical and emotional stress; and in some cases severe emotional trauma, illness, homelessness or other irreparable harm resulting from the strain of employment controversies; relocation, search and moving difficulties; anxiety caused by lack of information, uncertainty, and resultant planning difficulty; carrier, education, family and social disruption; and adjustment problems which particularly impact on those protected by this act. *Such harms, have under the common law, given rise to legal remedies, including compensatory and punitive damages. The Legislature intends that such damages be available to all persons protected by this act and that this act shall be liberally construed in combination with other protections available under the laws of this State.*

[*N.J.S.A.* 10:5–3 (emphasis added).]

The abovementioned cases were decided prior to the 1990 amendment, which expressly recognized the right to an award for punitive damages for a violation of the NJLAD. The plain language of the 1990 amendment clearly points out a legislative recognition of the great personal hardships that a person may experience as a result of discrimination, and a legislative intent

that the statute be liberally interpreted so as to make both compensatory and punitive damages available to persons injured by discriminatory conduct.

Moreover, racial discrimination fits well within the parameters established by the New Jersey courts which set forth the circumstances that warrant punitive damages. In *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 97 *N.J.* 37, 49, 477 *A.*2d 1224 (1984), the court stated:

> To warrant a punitive award, the defendant's conduct must have been wantonly reckless or malicious. There must be an intentional wrongdoing in the sense of an "evil-minded act" or an act accompanied by a wanton and wilful disregard of the rights of another.... The key to the right to punitive damages is the wrongfulness of the intentional act. "The right to award exemplary damages primarily rests upon the single ground—wrongful motive ⸱ ⸱ ⸱." (Citations omitted).

Racial discrimination is intentional and deliberate conduct which has no degrees. It is, in and of itself, outrageous conduct, an expression of malice, and "is peculiarly repugnant in a society that prides itself in judging each individual by his or her own merits." *Levinson, supra*, 868 *F.*2d at 562. Indeed, by its very nature, discriminatory conduct "embodies ideas of intent and wrongdoing that seem to fit the ordinary definition of wanton or malicious conduct." *See Weiss, supra*, 747 *F.Supp.* at 1136. Thus logic would dictate that conduct which rises to the level of unlawful discrimination is precisely the type of "evil-minded act" that could support an award of punitive damages. It would not be unreasonable for a finder of fact to conclude that such conduct is outrageous and deserving of punitive damages. Moreover, such punitive damage awards will serve to deter and punish wrongdoers, and further the Legislature's goals of alleviating the personal hardships suffered by victims of discrimination.

Under the circumstances, and considering the clear public policy expression of the Legislature to ensure proper compensation to persons who are the subject of discrimination, this court concludes that no proofs other than a violation of the statute are required to warrant the imposition of punitive damages.

Motion denied.