WILLY LEIMGRUBER AND HOPE H. LEIMGRUBER, HIS WIFE, PLAINTIFFS-APPELLANTS, v. CLARIDGE ASSOCIATES, LTD., DEFENDANT-RESPONDENT.

Argued April 5, 1977—Decided June 14, 1977.

---

*Mr. David W. Conrad* argued the cause for appellants.

*Mr. Herbert R. Ezor* argued the cause for respondent (*Messrs. Heller* and *Laiks,* attorneys; *Mr. Ezor* on the brief; *Mr. Murray A. Laiks,* of counsel).

The opinion of the court was delivered by

HUGHES, C. J. We certified, 71 *N. J.* 499 (1976), a judgment of the Appellate Division, whose unpublished opinion had reflected its difference of view with the trial court's decision on a question involving punitive damages.

The relatively simple issue here stems from the mutilation by the defendant-respondent Claridge Associates, Ltd. (Claridge) of some 11 trees on the property of its adjoining land owners, Mr. and Mrs. Willy Leimgruber (plaintiffs). Claridge's property was a large, elevated tract on which it was constructing, as observed by the trial court, a $20 million apartment complex. Plaintiffs owned and lived on a residential property about an acre in dimension, where they enjoyed to the rear of their home a wooded area (adjoining the Claridge property) containing the 11 trees in question. Claridge wished to build a heliport on its property requiring the partial cutting (topping) of some of the trees on *its* property, for the accommodation of a "flight path" required by aeronautical safety regulations, for the landing and departure of helicopters. Despite the fact that the Leimgruber property line was plainly marked, Claridge's workmen, at the direction of their foreman, intruded on plaintiffs' property and cut (unnecessarily as later appeared) about 30 feet in length off the tops of the plaintiffs' 11 trees mentioned. Charging that such trespass and damage were intentional and malicious, as well as in willful and wanton disregard of their rights, plaintiffs sought equitable relief as well as compensatory and punitive damages.

Judge Kimmelman, sitting without jury, determined that Claridge had evinced a wanton and willful disregard for plaintiffs' property rights. He therefore awarded plaintiffs $1,700 in compensatory damages and $16,500, or $1,500 for each of the 11 trees damaged, by way of punitive damages. Claridge appealed and the Appellate Division reduced the punitive damages to $5,000 on the basis of its finding that the trial court's award was "clearly excessive." We reverse and reinstate the trial court's judgment.

The Appellate Division found no fault[1] with the factual base upon which the trial court rested its decision that punitive damages should be awarded against defendant for what was determined to have been its wanton and reckless disregard of plaintiffs' rights. It saw no reason to disagree with the findings

that defendant's workmen "went on plaintiffs' property and topped eleven trees"; that compensatory damages amounted to a rounded-off figure of $1,700 consisting of damage to the trees, the sum needed for pruning and fertilizing, and the cost of clearing out several dead trees; that "there was no actual malice involved in the cutting of these trees"; that plaintiffs' trees were "cut thirty feet below" the required "flight angle" for "flight paths for heliports"; that defendant's workmen treated the work with a "cavalier" attitude; that the rear boundary line of plaintiffs' property could have and should have been ascertained by defendant; that the topping of the trees "to the degree thirty feet below the true flight angle * * * constituted a blatant act"; and that the action of defendant's employees "was very clearly a wanton and reckless disregard of the rights of property owners."

■■ Punitive or exemplary damages are sums awarded apart from compensatory damages and are assessed when the wrongdoer's conduct is especially egregious. They are awarded upon a theory of punishment to the offender for aggravated misconduct and to deter such conduct in the future. *Fisher v. Volz*, 496 F. 2d 333, 347 (3d Cir. 1974); *DiGiovanni v. Pessel*, 55 N. J. 188, 190 (1970); *Berg v. Reaction Motors Div.*, 37 N. J. 396, 412–13 (1962); *Trainer v. Wolff*, 58 N. J. L. 381, 382 (E. & A. 1895); *Belinski v. Goodman*, 139 N. J. Super. 351, 359 (App. Div. 1976); *Cabakov v. Thatcher*, 37 N. J. Super. 249, 259 (App. Div. 1955); *Hulbert v. Arnold*, 83 N. J. L. 114, 117 (Sup. Ct. 1912);

[1]"There is ample credible evidence in the record to support the findings of the trial court. We discern no basis for disturbing them. *State v. Johnson*, 42 N. J. 146, 162 (1964). Having found that the trespass by defendant's employees was accompanied by a wanton and willful disregard of plaintiffs' rights, the court could properly award punitive damages against defendant."

*Dobbs, Remedies* § 3.9, at 205 (1973); *McCormick, Damages* § 77 (1935); *Prosser, Torts* § 2, at 9 (4th ed. 1971); *Restatement (Second) of Torts* § 908(1), Comment a (Tent. Draft No. 19, 1973). There is no doubt that here the Chancery judge rightly awarded punitive damages for the willful and wanton misconduct he found on the part of Claridge. *Berg v. Reaction Motors Div., supra.*

The sole issue before us, then, is the soundness of the appellate reduction of the $16,500 punitive damage award to $5,000. That action was not based, so far as we can discern, on any contrary determination of supposedly mistaken fact or error in law, or on the finding of new facts through the exercise of original jurisdiction under the rule, *R.* 2:10–5, which is cited in support of its decision. Nor does the opinion of the Appellate Division announce as such any sense of shock, outrage, manifest injustice or abuse of trial court discretion. The only stated justification for the reduction is somewhat uninformative except as it suggests the supposed need for a definite relationship in amount between punitive and compensatory damages, a proposition unsupported, at least with any precision, by any decision in this jurisdiction. The Appellate Division applied this "ratio" rule as follows:

> While punitive damages were properly assessable, the amount awarded was, in the totality of the circumstances, clearly excessive, having no reasonable relation whatever to the actual damage to the topped trees. * * *
>
> From our review of the record we are satisfied that a punitive damage award in excess of $5,000, or approximately three times the award of compensatory damages, is clearly unjustified in this case.

In examining the propriety of the decision to reduce the trial judge's award of damages, we consider first the general scope of appellate review of judgments entered in a non-jury case. We noted in *Rova Farms Resort v. Investors Ins. Co.*, 65 *N. J.* 474, 483–84 (1974) that our courts have held that trial court findings should not be disturbed unless " "* * * they are so wholly insupportable as to re-

sult in a denial of justice,' and that the appellate court should exercise its original fact finding jurisdiction sparingly and in none but a clear case where there is no doubt about the matter. *Greenfield v. Dusseault*, 60 *N. J. Super*. 436, 444 (App. Div. 1960), aff'd o. b. 33 *N. J.* 78 (1960)"; that "[f]indings by the trial judge are considered binding on appeal when supported by adequate, substantial and credible evidence. *New Jersey Turnpike Authority v. Sisselman*, 106 *N. J. Super*. 358 (App. Div. 1969), certif. den. 54 *N. J.* 565 (1969)"; that "'our appellate function is a limited one: we do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice,' *Fagliarone v. Twp. of No. Bergen*, 78 *N. J. Super*. 154, 155 (App. Div. 1963), and the appellate court therefore ponders whether, on the contrary, there is substantial evidence in support of the trial judge's findings and conclusions. *Weiss v. I. Zapinsky, Inc.*, 65 *N. J. Super*. 351, 357 (App. Div. 1961)."

██ ██ The decision to award exemplary damages and the amount thereof rests within the sound discretion of the trier of fact. *Fisher v. Volz, supra; Cabakov v. Thatcher, supra; Dobbs, Remedies* § 3.9, at 218 (1973) ; *Restatement (Second) of Torts* § 908, Comment d (Tent. Draft No. 19, 1973). In assessing such damages, the trier of fact should take into consideration all of the circumstances surrounding the particular occurrence including the nature of the wrongdoing, the extent of harm inflicted, the intent of the party committing the act, the wealth of the perpetrator, as well as any mitigating circumstances which may operate to reduce the amount of the damages. *Restatement (Second) of Torts* § 908(2) (Tent. Draft No. 19, 1973) ; 22 *Am. Jur.* 2d *Damages* § 263 (1965).

The major difficulty in establishing the amount of the punitive damage recovery is the absence of any definitive

standard or criterion to guide the trier of fact in determining the proper amount. *Cabakov v. Thatcher, supra;* *McCormick, Damages* § 85 at 296. And since reviewing courts similarly lack any specific standards by which to measure the damages, there is a corresponding difficulty in considering the propriety of such award on appeal, a phenomenon noticed very early in New Jersey. As long ago as 1833 our former Supreme Court, in *Allen v. Craig,* 13 *N. J. L.* 294, 301, noted that "when a jury gives exemplary damages the court has no graduated scale by which to measure them, and its general and safest rule, is not to interfere, unless they are manifestly outrageous \* \* \*", cited with approval in *Boniewsky v. Polish Home of Lodi,* 102 *N. J. L.* 241, 244 (Sup. Ct.), *aff'd* 103 *N. J. L.* 323 (E. & A. 1926).

Despite the lack of an established standard by which the amount of punitive damages may be fixed, the general doctrine is that the exemplary damages awarded must bear some reasonable relation to the injury inflicted and the cause of the injury. But the obvious proposition that the amount of damages should be related to the severity of the wrongful conduct and the scope of the resulting injury does not provide much meaningful guidance for setting the amount of the award, and certainly does not call for a fixed ratio between compensatory and punitive damages awarded.

To contain the broad discretion normally accorded the trier of fact in determining exemplary damage awards, some courts have adopted the requirement that the punitive award must represent some proportional relationship to the amount of compensatory or actual damages awarded. This requirement is known as the reasonable proportion or "ratio" rule. *See Dobbs, Remedies* § 3.9, at 210–11 (1973) ; *McCormick, Damages* § 85, at 298 (1935) ; *Prosser, Torts* § 2, at 14 (4th ed. 1971) ; 22 *Am. Jur.* 2d *Damages* § 265 (1965) ; *Annot.,* 17 *A. L. R.* 2d 527, 548–49 (1951). However, a substantial number of other courts have rejected the rigidity of this rule, leaving such a wide split of authority on the

point that neither view has been recognized as constituting the majority rule. The consensus seems to involve a reasonable relationship between the punitive damage award and the scope of injury inflicted, without ignoring other factors such as the egregious nature of the offense. *Compare Thomas v. American Cystoscope Makers, Inc.*, 414 *F. Supp.* 255, 263–64 (E. D. Pa. 1976) (applying Pa. law requiring reasonable relationship); *Claude v. Weaver Constr. Co.*, 261 *Iowa* 1225, 158 *N. W.* 2d 139, 145 (1968) (must be relationship) *with Beggs v. Universal C. I. T. Credit Corp.*, 409 *S. W.* 2d 719, 724 (Mo. 1966) (no ratio); *Pezzano v. Bonneau*, 133 *Vt.* 88, 329 *A.* 2d 659, 661 (Vt. 1974) (same). *See also Wegner v. Rodeo Cowboys Ass'n*, 290 *F. Supp.* 369, 370–73 (D. Colo. 1968); *Hensley v. Paul Miller Ford, Inc.*, 508 *S. W.* 2d 759, 763 (Ky. 1974); *Kesler v. Rogers*, 542 *P.* 2d 354, 359–60 (Utah 1975); *Petsch v. Florom*, 538 *P.* 2d 1011, 1013–14 (Wyo. 1975).

We are not aware of any decision in this jurisdiction accepting, rejecting, or even discussing the relative merits of the reasonable proportion rule as a fixed standard for the assessment of punitive damages. One major objection to the "ratio" rule is that it collides with the rationale for imposing punitive damages which are awarded, as noted, on a theory of punishment and deterrence; the amount fixed should vary with the wrongdoer's financial circumstances, so that very wealthy offenders would be charged with higher damages. *Belinski v. Goodman, supra,* 139 *N. J. Super.* at 357. This would suggest that the reasonable proportion rule should be oriented as well to one's ability to pay as to be related only to the amount of compensation granted, which latter the "ratio" rule would seem to mandate. Section 908 (2) of the *Restatement (Second) of Torts* (Tent. Draft No. 19, 1973), dealing with the assessment of punitive damages, does not require that any reasonable proportion exist between actual and exemplary damages.

■ It is probable that the real purpose served by the "ratio" rule is to remind the reviewing courts of their

power to overturn excessive damage awards. *Finney v. Lock-hart*, 35 *Cal.* 2d 161, 217 *P.* 2d 19, 21 (1950). But the "ratio" rule is not needed for this purpose since the appellate court is always free to determine that the punitive award is excessive, based on factors in addition to the scope of compensatory damage. As indicated, the Appellate Division here seemed to give excessive weight to the "ratio" rule, feeling that any award in excess of $5,000 or "approximately three times the award of compensatory damages" would be excessive. Its decision advances no factual reasons for setting aside the trial judge's award except to state that "in the totality of the circumstances" the award was "clearly excessive." It did not seem to determine whether its reduced figure would adequately punish and deter Claridge. None of the other considerations which normally enter into a punitive damage assessment was discussed, such as the comparative seriousness of the misconduct and the wealth of the malefactor.

This Court has held that verdicts should be upset for being excessive only in clear cases, *Fritsche v. Westinghouse Elec. Corp.*, 55 *N. J.* 322, 330 (1970) ; that damage awards will not be set aside unless so excessive as irresistibly to give rise to the inference of mistake, passion, prejudice or partiality, *Hager v. Weber,* 7 *N. J.* 201, 213 (1951) ; or are so disproportionate as to shock the conscience, *Taweel v. Starn's Shop-rite Supermarket,* 58 *N. J.* 227, 236 (1971) ; or the sustaining of the award would result in a manifest denial of justice, *id.; Sweeney v. Pruyne,* 67 *N. J.* 314, 315 (1975). We discern none of these factors as a basis of the appellate action taken here.

Our Appellate Division in *Cabakov v. Thatcher, supra,* reversed a similar action by a trial judge in setting aside a verdict for punitive damages because he "failed to specify the reasons for his action and apparently failed to distinguish between the guiding principles involved in interfering with a verdict for punitive damages as distinguished from one for compensatory damages," concluding from that factor, *inter*

*alia,* "that the setting aside of the verdict for punitive damages has clearly worked a manifest denial of justice to the plaintiff under the law and that the action of the trial court cannot be sustained." 37 *N. J. Super* at 261. The same infirmities are apparent in the action of the Appellate Division which we here reverse.

Our careful examination of the trial court finding reveals, by contrast, a meticulous consideration of elements relating to the appropriate amount of the award. Judge Kimmelman recited facts amply supporting the willful and wanton character of Claridge's actions. He determined that there was no problem in discerning the rear line of plaintiffs' property, thus emphasizing the enormity of Claridge's misdeed. He found from the evidence before him how unnecessary it was for this trespass and mutilation of the trees to have occurred. He rejected the feeble excuse of the company foreman that he was busy and unable to attend to the detail of the plaintiffs' boundary line because he was in charge of some $70 million worth of construction projects. He had clearly in mind the punitive aspect of the award, as indicated by various references in his statement of opinion: "Claridge * * * is a wealthy project"; "how much money would constitute a deterrent"; "we are trying to ascertain a figure which would have a punitive effect, that is, to punish, to make them not do it again."

▮ Evidence before the court indicated that the damaged trees could be rehabilitated only by growth over a period of 10 to 12 years and the trial court, emphasizing the propriety of its award, mentioned that it could as well have reached the same total amount of punitive damages of $16,500 ($1,500 for each of 11 trees) by awarding $1,500 for each of the 11 years it would take for the trees to heal and be rehabilitated. Our review of his extensive findings of fact and conclusions of law convinces us that Judge Kimmelman's award of $16,500 in punitive damages was sound and reasonable on the basis of the record before him.

■ Hence we think the Appellate Division should have applied here the full reach of the standards of appellate review stated by Justice Hall in *State v. Johnson,* 42 *N. J.* 146, 158 (1964). As we noted in footnote 1, *supra,* it did so as to one segment of the case, namely the determination of the basic right to punitive damages. Absent a finding that the quantum of such damages was "manifestly outrageous" (*Allen v. Craig, supra*) it should have refrained as well from disturbing that part of the trial court judgment.

Reversed.

*For reversal*—Chief Justice HUGHES and Justices MOUN-TAIN, SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—7.

*For affirmance*—None.