Jack GOLD, et al., Plaintiff,

v.

JOHNS–MANVILLE SALES CORP., etc., et al., Defendants.

Grace MANAREVIC, et al., Plaintiffs,

v.

JOHNS–MANVILLE SALES CORP., etc., et al., Defendants.

Civ. Nos. 80–2907, 81–1496.

United States District Court, D. New Jersey.

July 16, 1982.

Ergood & Gavin, by James Gavin, and Paul Kahn, Westmont, Mass., for plaintiffs.

Morgan, Melhuish, Monaghan & Spielvogel, by Nan Bernardo, and Mark Mintz, Livingston, N.J., for defendant Raybestos-Manhattan.

## OPINION OF THE COURT

ACKERMAN, District Judge.

In these two asbestos products liability cases, defendant Raybestos Manhattan has moved for partial summary judgment, or alternatively, for bifurcation of the trial on the issue of punitive damages. It alleges in support of its motion that the documentary evidence upon which the plaintiff intends to rely as proof of its claims for punitive damages—the Sumner Simpson papers and the A.T.I. minutes—should be excluded as inadmissible. As I have this date ruled on these *in limine* motions and determined that these documents will be admitted into evidence subject to Fed.R.Evid. 402 and 403 objections at trial, I shall not consider this argument.

Raybestos has also argued that they are entitled to judgment as a matter of law either because those documents cannot sustain a claim for punitive damages, or because such damages are inappropriate in litigation of this nature. There is also an argument that as assessment of punitive damages would be unconstitutional because it creates *de facto* a criminal action. Plaintiffs respond to the motion by asserting that the proofs at trial will be sufficient to raise an issue for the jury as to whether the defendant acted willfully and wantonly in suppressing knowledge of the dangers of asbestos fibers.

As this is a novel question of state law, I take guidance from the instructive opinion of Judge Adams in *Becker v. Interstate Properties,* 569 F.2d 1203 (3d Cir. 1977), *cert. den.* 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978).

> Inasmuch as no New Jersey cases are squarely on point, it is important to make clear that our disposition of this case must be governed by a prediction of what a New Jersey court would do if confronted with the facts before us. Such an estimate cannot be the product of a mere recitation of previously decided cases. Rather, as in any diversity case, a federal court must be sensitive to the doctrinal trends of the state whose law it applies, and the policies which inform the prior adjudications by the state courts. *Id.* at 1205–06.

Because I have determined that an action based on strict products liability cannot support a claim for punitive damages under the most recent decision of the New Jersey Supreme Court, *Beshada v. Johns-Manville Products Corp.,* 90 N.J. 191, 447 A.2d 539 (1982), I have not reached the defendant's other arguments. However, insofar as the plaintiffs reserve their right to present claims based upon a negligence tort theory, I will allow them to present proof of the defendants' alleged wanton conduct.

In *Beshada,* the Supreme Court reviewed the development and contours of the doctrine of strict products liability. While the Court did not address the issue of punitive damages in such actions, I find that they have marked the way with signposts. The Court carefully outlined the differences between negligence and strict products liability theories, as well as between duty to warn cases and safety device cases. The former distinction is especially enlightening for the analysis of punitives. Justice Pashman stated: "Negligence is conduct-oriented, asking whether defendant's actions were reasonable; strict liability is product-orient-

ed, asking whether the product was reasonably safe for its foreseeable purpose. *Freund* [*v. Cellofilm Properties, Inc.*] 87 N.J. [229] at 238 [, 432 A.2d 925]." 90 N.J. at 200, 447 A.2d 539.

In considering whether the imputation of knowledge in strict liability is inconsistent with the defense of state of the art, the Court again emphasized: "The imputation of knowledge is, of course, a legal fiction. It is another way of saying that for purposes of strict liability, the defendant's knowledge of the danger is irrelevant." *Id.* at 200 n. 3, 447 A.2d 539. There can thus be no question that the focus in a strict products liability case must be "on the product, not the fault of the manufacturer". *Id.* at 204, 447 A.2d 539.

If the defendant's conduct is not the focal point here, as it would be in a negligence action, what are the consequences for claims of punitive damages? I predict that if the issue were before the New Jersey Court that the Court would apply the reasoning of Beshada which supported its determination to strike the state of the art defense to this issue. Put another way, the claim of punitive damages based on the fact that the defendants knew too much is the flip side of the state of the art defense. Both are "negligence concepts with their attendant focus on the reasonableness of the defendant's behavior," *id.*, which should be eschewed in product liability litigation for policy reasons.

The underlying economic or philosophic reasons for striking the defense of state of the art were:

(1) the costs of injuries caused by the product will be spread to that segment of the society who can best assume it, who have profited from the sale of the product, and who will adjust the price of the product to reflect the costs of injuries;

(2) the imposition of the costs of failure to discover previously the hazards of the product will serve as an incentive upon the producers to invest more actively in safety research; and

(3) the factfinding process will be considerably simplified if questions of blameworthiness are severed from the jury deliberations, especially where they involve consideration of what was scientifically knowable at a given point in time.

With respect to this first goal sought to be achieved by strict liability rules, *id.* at 205, 447 A.2d 539, the allowance of punitive damages would warp the valuation process which is implicit in the litigation process. That is, the product's price should reflect the cost of accidents or the cost of accident avoidance mechanisms in order that the market may assess the usefulness of the product. *See id.* at 206–07, 447 A.2d 539, *quoting Suter v. San Angelo Foundry,* 81 N.J. 150 at 173–174, 406 A.2d 140. The assessment of punitive damages upon the manufacturer and distributors can be analyzed as the imposition of costs for poor managerial decisions. These costs should not be spread to the buying public through an adjustment of the product's price. To do so will deflate the usefulness of the product on the basis of facts which do not relate to the product itself.

The imposition of punitive damages in a strict liability suit might fulfill the second stated policy of providing an incentive to invest in research. However, I do not find that this factor weighs definitively in favor of allowing these claims. Plaintiffs set forth a claim for punitives because the defendants allegedly suppressed information of the risks involved in the use in the manufacture of this product. This implies that research had already been undertaken, albeit not by the defendants themselves, which would have informed the defendants of the true cost of using asbestos. Punitives, therefore, would principally serve to penalize the defendants for their intentional behavior. While a large award will always encourage more cautious behavior in the future by that defendant, it would not encourage producers as a class to research the risks involved with their products, but would only teach them to eschew learning of the research of others.

The third policy argument presented by the *Beshada* court for eliminating the state of the art defense was the strict isolation of product liability from concepts of negligence.

> We are not saying what defendant *should* have done. That is negligence. We are saying that defendants' products were not reasonably safe because they did not have a warning ... We impose strict liability because it is unfair for the distributors of a defective product not to *compensate* its victims. *Id.* 90 N.J. at 209, 447 A.2d 539. (Emphasis added.)

Punitive damages is clearly a negligence concept concerned with normative behavior. Its inclusion, I find, in a strict products liability suit would confuse the jury and undermine the goals of the cause of action. I predict that the New Jersey Supreme Court would concur.

Nevertheless, I will not strike the plaintiff's claim for punitive damages from their complaints entirely. Plaintiffs have not abandoned the causes of action based upon the negligence theory. Punitive damages are traditionally allowed in negligence suits, if the facts warrant their imposition. In *Leimgruber v. Claridge Associates, Ltd.,* 73 N.J. 450, 375 A.2d 652 (1977), the New Jersey Supreme Court stated: "Punitive or exemplary damages are sums awarded apart from compensatory damages and are assessed when the wrongdoer's conduct is especially egregious." 73 N.J. at 454, 375 A.2d 652.

In order to find that defendant's behavior is especially egregious, plaintiff has to prove that defendant wantonly and willfully disregarded his or her rights. *See Berg v. Reaction Motors Division,* 37 N.J. 396, 181 A.2d 487 (1962). The issue of whether to award punitives, therefore, implicates the state of mind or motive or good faith of the persons involved in these corporate decisions. I find for these reasons that it would be inappropriate for me to rule at this juncture to summarily remove the issue from the province of the jury. An additional reason for denying summary judgment without prejudice is that I have reserved decision on the relevance of certain documents upon which the plaintiffs will rely in support of their claims for punitives.

In sum, I have determined that as a matter of law, punitive damages will not be allowed where the plaintiffs rest upon strict product liability, but it will be allowed as a matter of law on any negligence counts asserted by the plaintiffs. If at the trial defendants wish to move to preclude consideration by the jury on this issue because plaintiffs' proofs fail, in their eyes, to support such a claim, they may do so.