**Barry FRIEDMAN, et al.**

v.

**F.E. MYERS CO.**

v.

**GENERAL ELECTRIC COMPANY and Monsanto Company.**

Civ. A. No. 88–3033.

United States District Court,
E.D. Pennsylvania.

March 20, 1989.

Memorandum April 11, 1989.

Arthur W. Lefco, Alan C. Milstein, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, Pa., for plaintiffs.

Faith R. Greenfield, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., Jane C. Flickstein, Richard E. Guster, & Timothy S. Guster, Roetzel & Andress, Akron, Ohio, pro hac vice, for F.E. Meyers Co.

James D. Shomper, Michael H. Malin, White & Williams, Philadelphia, Pa., for Monsanto Co.

Harry A. Short Jr., Philadelphia, Pa., for General Elec. Co.

## MEMORANDUM

NEWCOMER, District Judge.

The matter is before the court on defendant F.E. Myers Co.'s (Myers) post-trial motions for new trial on jury issue, new trial on other issues, and judgment notwithstanding the verdict.

### I. *Background*

This is a personal injury action arising out of plaintiffs' alleged exposure to polychlorinated biphenyls (PCBs). As alleged by plaintiffs, a submersible water pump manufactured by Myers and installed in a water well at their home in 1974 malfunctioned in 1987. Plaintiff Carol Pearl was exposed to PCBs after ingesting and showering in water from the well.

Jury selection occurred on January 24, 1989. Trial commenced on the same day and continued until January 31, 1989, at which time the jury commenced deliberations. As presented to the jury, plaintiffs' claims against Myers were based on strict liability and negligence. The jury returned its verdict on February 2, 1989. By its verdict, the jury concluded that the Myers pump was not a defective product, but that Myers had been negligent and that such negligence was the proximate cause of Pearl's injuries and Friedman's property damage. The jury awarded Pearl compensatory damages of $1,000 and punitive damages of $750,000, and awarded Friedman compensatory damages of $15,000.

As a result of a conversation between plaintiffs' counsel and the court's law clerk later in the day on February 2, 1989, and after return of the verdict and discharge of the jury, the court learned that the jury and Pearl had discussed the case in the hallway outside the courtroom after the trial. Specifically, plaintiffs' counsel told the law clerk that jury foreman Edward Zell had told Pearl that Zell discovered, during the trial, that he had a Myers pump.

After learning of this information, the court held a telephone conference with counsel for the plaintiffs and Myers on February 3, 1989. *See* Transcript of Telephone Conference Call, February 3, 1989, at 1–12. During the conference, Myers' counsel was told of what had transpired, and then plaintiffs' counsel recounted the conversation between Pearl and the jury foreman. Later in the day, a second conference call occurred. *See* Transcript of Telephone Conference Call, February 3, 1989, at 12–23. During the second conference, Myers stated that the juror's conduct constituted "clear grounds for a new trial." *Id.* at 13.

In addition to its motion for a new trial based on the juror issue, Myers also filed motions for judgment notwithstanding the verdict and for new trial on other grounds.

## II. *Conduct of the Juror*

### A. *Background*

As a result of the second conference and at Myers' request, *see* Motion of Defendant F.E. Myers for New Trial and Request for Hearing, the court held a hearing on the juror's conduct on February 6, 1989. After being sworn, jury foreman Edward Zell was questioned initially by the court, and then briefly by counsel, in accordance with Fed.R.Evid. 606(b).[1]

With regard to voir dire, Zell testified that in response to a question from the attorneys, he told them that: he had a well pump; and he did not know who manufactured the pump, but he had owned it for approximately twenty-five years and "it was a good one."

With regard to his discovery that his pump was a Myers pump, Zell testified that: he went into his basement over the weekend of January 28–29, 1989 (while the trial was still in progress) and discovered that his well pump had a label or some other insignia indicating that it was made by F.E. Myers Company; and on Monday, January 30, 1989, he told the other members of the jury that he had a Myers pump and that he planned to remove it.

With regard to his conversation with Pearl in the courtroom hallway after the trial, Zell testified that he told Pearl that: he hoped she lived a healthy life in the future; he had a Myers pump that was about twenty-five years old; and that he planned to remove his Myers pump shortly.

### B. *Motion for New Trial Based on Juror's Conduct*

Defendant Myers has moved for a new trial pursuant to Fed.R.Civ.P. 59(a) as a result of the jury foreman's conduct described above. A Rule 59(a) motion is committed to the discretion of the district court, *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984), and the granting of a motion for new trial is a drastic remedy. *Olson v. Bradrick,* 645 F.Supp. 645, 654 (D.Conn.1986). Rule 61 of the Federal Rules of Civil Procedure also pertains to motions for a new trial, and requires the court to disregard "harmless errors," i.e., any error or defect in the proceedings which does not affect the substantial rights of the parties.

One element of a fair trial is an impartial trier of fact; in this case, "a jury capable and willing to decide the case solely on the evidence before it." *McDonough,* 464 U.S. at 554, 104 S.Ct. at 849. According to the Supreme Court, a litigant "is entitled to a fair trial but not a perfect one, for there are no perfect trials." *Id.* at 553, 104 S.Ct. at 848. As stated in one treatise, a district court may not disregard a jury verdict by granting a new trial "unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done." *Olson v. Bradrick,* 645 F.Supp. 645, 654 (D.Conn.1986) (quoting 11 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* Section 2803 at 32 (1973 & Supp.1986)). Furthermore, it is well settled that the jury's deliberative processes are not legally cognizable, except when subject to "extraneous influences." *Van Buskirk v. Carey Canadian Mines, Ltd,* 760 F.2d 481, 488 (3d Cir.1985). As stated by the Third Circuit, when matters such as envy, bias, and prej-

---

**1.** Fed.R.Evid. 606(b) (Inquiry into validity of verdict or indictment) provides as follows:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connec-

tion therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

udice result only from intra-jury influences, they will not support a reversal of a jury verdict. *Id.*

### C. *Discussion*

Defendant Myers argues that juror Zell's "investigation" and statements to his fellow jurors resulted in an improper influence and prejudice against Myers so as to require a new trial. Plaintiffs contend, on the other hand, that Zell's discovery and statements to the other jurors did not result in prejudicial error or substantial injustice.

■ At the outset, the court finds no impropriety in jury foreman Zell's conduct. In response to questions during voir dire, Zell stated that he had a twenty-five year old well pump of unknown manufacture and that "it [the pump] was a good one." Neither plaintiff or defendant Myers challenged or attempted to strike Zell. There is no evidence to indicate, nor do the parties contend, that Zell did not answer truthfully and fully the questions regarding water well pumps during the jury voir dire. Clearly, then, Zell was competent and unbiased when he was sworn as a member of the jury.

■ Reduced to the essential facts, Zell went into his basement, looked at his well pump, and saw that it had a label or some other insignia indicating that it was made by F.E. Myers Company. The court finds that this occurrence, in and of itself, does not constitute an "extraneous influence;" that is, Zell did not discover or learn of any material facts as a result of this venture. He performed no tests on the pump, nor did he observe any leaking or other malfunction of the pump. *Cf. In re Beverly*

*Hills Fire Litigation,* 695 F.2d 207 (6th Cir.1982), *cert. denied,* 461 U.S. 929, 103 S.Ct. 2090, 77 L.Ed.2d 300 (1983) (juror tested wiring in his house). The only thing that Zell learned about the pump that differed from his statements at voir dire was that he now knew who manufactured his pump.[2]

After his basement discovery, Zell no longer was of the opinion that the pump "was a good one," as evidenced by his statement to his fellow· jurors that he planned to remove the pump. That Zell was biased or prejudiced against Myers, however, was clearly a result of the trial testimony and not based on his basement discovery. This is readily apparent from the fact that at voir dire, Zell said that his pump "was a good one," yet six days later he said that he "planned to remove it." The only intervening influence on Zell during this period was three and one-half days of trial testimony in this case. Thus, any "anti-Myers" sentiment possessed and expressed by Zell was based on his impression of the trial testimony to that point and not on some "extraneous influence." Similarly, that Zell then shared his anti-Myers sentiments with his fellow jurors is a natural development and result of hearing trial testimony. The court finds that whatever bias or prejudice resulted from Zell's statements to his fellow jurors, if any, simply was not an "extraneous influence." *See Van Buskirk v. Carey Canadian Mines, Ltd,* 760 F.2d 481, 488 (3d Cir.1985). As such, the court concludes that neither Zell's basement discovery nor his statements to his fellow jurors warrants a reversal or overturning of the jury's verdict.

---

**2.** That Zell learned nothing of significance nor discovered any material facts readily distinguishes the instant case from others in which extraneous influences on the jury necessitated the granting of a new trial. *See, e.g., In re Beverly Hills Fire Litigation,* 695 F.2d 207 (6th Cir.1982), *cert. denied,* 461 U.S. 929, 103 S.Ct. 2090, 77 L.Ed.2d 300 (1983) (juror conducted out-of-court experiment of wiring in his home and reported results to the jury members; court found that juror's investigation had the effect of putting him in possession of evidence not offered at trial); *Aluminum Co. of America v.*

*Loveday,* 273 F.2d 499 (6th Cir.1959), cert. denied, 363 U.S. 802, 80 S.Ct. 1236, 4 L.Ed.2d 1146 (1960) (juror conducted out of court view of cattle allegedly injured and reported results to fellow jurors); *see generally* 6A Moore's Federal Practice ¶ 59.08[4] (1987 & 1987–88 Cumm. Supp.) (citing cases involving jury misconduct). Obviously, had juror Zell tested his well pump, or observed it leaking or otherwise malfunctioning, a different result would obtain; but, again, Zell learned only that pumps manufactured by Myers some 25 years ago bore a label or insignia indicating Myers as the manufacturer.

III. *Motions for Judgment Notwithstanding the Verdict or New Trial*

In addition to the juror conduct issue, Myers also has moved for judgment notwithstanding the verdict or new trial on various other issues including sufficiency of the evidence, inconsistency in the jury's verdict, and excessiveness of the punitive damage award.[3] I will now examine these issues in turn.

A. *Legal Standards*

On a motion for judgment notwithstanding the verdict, the court must examine the record in the light most favorable to the plaintiff. *Petree v. Victor Fluid Power, Inc.*, 831 F.2d 1191, 1194 (3d Cir.1987). The court must determine whether, as a matter of law, the record is critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief. *Id.* In considering the motion, the court must give the plaintiff the benefit of all reasonable inferences capable of being drawn from the evidence. *Blair v. Manhattan Life Insur. Co.*, 692 F.2d 296, 300 (3d Cir.1982). The court is not free to weigh the evidence, pass on the credibility of witnesses, or substitute its judgment of the facts for that of the jury. *Id.*

On a motion for a new trial, it is the district court's duty to see that there is no miscarriage of justice. *Lanza v. Poretti*, 537 F.Supp. 777, 782 (E.D.Pa.1982). The court may not substitute its own judgment for that of the jury, and the jury's verdict may be set aside only if manifest injustice will result if allowed to stand. *Id.*

B. *Sufficiency of the Evidence*

With regard to the sufficiency of the evidence, the court has reviewed and examined the record in the light most favorable to the plaintiff. After so doing, the court is unable to conclude as a matter of law that the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief, or

that the verdict was against the weight of the evidence.

C. *Inconsistency of Verdicts*

■ Myers also argues that the jury verdict was fatally "inconsistent," because the jury found that the pump was not a defective product but found that Myers was negligent. The court rejects the notion that the jury's conclusions were inconsistent or irreconcilable. As noted in plaintiffs' response to Myers' motion, while the jury found that the pump was not a defective product, there were ample bases for the jury to reasonably conclude that Myers was negligent. *See* Plaintiffs' Answering Memorandum to Defendant's Motion, at 10–21.

D. *Excessiveness of Punitive Damages Award*

As indicated above, the jury awarded Pearl compensatory damages of $1,000 and punitive damages of $750,000. At the outset, the court finds that there was an adequate basis upon which the jury could award punitive damages. A more difficult issue, however, is raised by the amount of punitive damages awarded by the jury. Myers argues that the amount of punitive damages awarded is excessive as a matter of law under Pennsylvania law and the United States Constitution.

Under Pennsylvania law, any punitive damages awarded must bear a reasonable relationship to the actual compensatory damages awarded. *Martin v. Johns–Manville Corp.*, 508 Pa. 154, 494 A.2d 1088, 1098 (1985). Although not specifically instructed that a "reasonable relationship" had to exist between compensatory and punitive damage awards, the jury was told the following with regard to the amount of punitive damages: (1) that they could consider factors such as the character of the defendant's act, the nature and extent of the harm to the plaintiff which the defendant caused or intended to cause, and the wealth of the defendants in so far as it was

---

**3.** I have confined this portion of the memorandum to those issues raised by Myers that I believe merit discussion.

relevant in fixing an amount that would punish him and deter him and others from like conduct in the future; (2) that the amount of any punitive damages assessed must be measured by their consideration of the above factors as they apply to the defendant; and (3) that the amount of punitive damages awarded must not be the result of passion or prejudice against the defendant on the part of the jury. *See Martin*, 508 Pa. at 168–73, 494 A.2d at 1096–98; *Delahanty v. First Pennsylvania Bank*, 318 Pa.Super. 90, 131–36, 464 A.2d 1243, 1264–66 (1983).

Based on the court's charge to the jury on punitive damages, I am satisfied that the jury was given proper guidance on how to calculate such an award. I must now determine, however, whether the punitive damage award of $750,000 bears a reasonable relationship to the $1,000 compensatory damage award given to Pearl, as required under Pennsylvania law. *Martin v. Johns–Manville Corp.*, 508 Pa. 154, 494 A.2d 1088, 1098 (1985).

Under the case law applying Pennsylvania law, no set proportion or fixed ratio between compensatory and punitive damages has emerged by which "excessiveness" may be determined. *See Delahanty v. First Pennsylvania Bank*, 318 Pa.Super. 90, 133, 464 A.2d 1243, 1265 (1983). Commenting on application of the same "reasonable relationship" standard under New Jersey law, that state's Supreme Court has acknowledged that the standard "does not provide much meaningful guidance for setting the amount of the [punitive] award." *Leimgruber v. Claridge Assoc's, Ltd.*, 73 N.J. 450, 458, 375 A.2d 652, 656 (1977). A survey of other cases is helpful, though, and provides the court with some guidance in carrying out its assigned duty.

A recent law review comment summarizes Pennsylvania cases on the issue as follows:

> See e.g., *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1279 (3d Cir.1979) (en banc) (punitive award of $60,590 not excessive in actions for breach of contract and intentional inflic-

tion of emotional distress, where compensatory award was $10,000); *Hughes v. Babcock*, 349 Pa. 475, 481, 37 A.2d 551, 554 (1944) (punitive award of $3000 excessive in trespass action, where compensatory award was $2500, but punitive award of $1000 was acceptable); *Voltz v. General Motors Acceptance Corp.*, 332 Pa. 141, 145, 2 A.2d 697, 698–99 (1938) (punitive award of $2500 excessive in wrongful conversion action, where compensatory award was $859.73, but punitive award of $1000 was acceptable); *Thompson v. Swank*, 317 Pa. 158, 160, 176 A. 211, 212 (1934) (punitive award of $3195 excessive in distraint action, where compensatory award was $195, but punitive award of $1500 was acceptable); *Mitchell v. Randal*, 288 Pa. 518, 520, 137 A. 171, 172–73 (1927) (punitive award of $5000 excessive in assault and battery action, where compensatory award was $1000); *Rider v. York Haven Water & Power Co.*, [251] Pa. 18, 26, 95 A. 803, 806 (1915) (punitive award of $2700 excessive in trespass action, where compensatory award was $1000); *Delahanty v. First Pennsylvania Bank*, 318 Pa.Super. 90, 135, 464 A.2d 1243, 1266 (1983) (punitive award of $440,000 not excessive in fraud action where compensatory award was $40,000); *Feld v. Merriam*, 314 Pa. Super. 414, 437, 461 A.2d 225, 237 (1983) (punitive award of $1.5 million excessive in trespass action against landlord for injuries sustained in criminal attack by third parties, where compensatory award was $1 million, but punitive award of $750,000 was acceptable); *Hannigan v. S. Klein's Dept. Store*, 1 Pa.D. & C.3d 339, 353–54 (C.P.1976) (punitive award of $52,500 excessive in assault and battery action, where compensatory award was $35,000, but punitive award of $17,500 was acceptable).

Comment, *The Imposition of Punitive Damages in Product Liability Actions in Pennsylvania*, 57 Temp.L.Q. 203, 230 n. 162 (1984).

In addition to the aforementioned list, the court's research has disclosed the following cases: *Marcone v. Penthouse Int'l, Ltd.*, 577 F.Supp. 318 (E.D.Pa.1983), *re-*

*versed on other grounds,* 754 F.2d 1072 (3d Cir.), *cert. denied,* 474 U.S. 864, 106 S.Ct. 182, 88 L.Ed.2d 151 (1985) (compensatory damages were $30,000; punitive damage award of $537,500 excessive and reduced to $200,000); and *Continental Data Systems, Inc. v. Exxon Corp.,* No. 84–2538, 1986 WL 20432 (E.D.Pa. June 30, 1986) (Newcomer, J.) (upholding a jury's award of punitive damages of $300,000 on compensatory damages of $78,000).

While the court is mindful that no set proportion or fixed ratio between compensatory and punitive damages exists under Pennsylvania law, the aforementioned cases indicate that courts have approved punitive damage awards as high as 11.0 times the amount of compensatory damages awarded, and have found ratios ranging between 1.2 to 1.0 and 17.9 to 1.0 excessive as a matter of law. In the case before me, the punitive damage amount is *seven hundred fifty* times the amount of compensatory damages.[4] I hasten to note, however, that this ratio obviously is skewed due to the low compensatory damage award. In addition, as the New Jersey Supreme Court has noted, "some particularly egregious conduct may generate only minimal compensatory damages, 'higher punitive damages would be justified than when substantial compensatory damages are awarded.'" *Fischer v. Johns–Manville Corp.,* 103 N.J. 643, 673, 512 A.2d 466, 482 (1986) (applying New Jersey law); *see also Continental Data Systems, Inc. v. Exxon Corp.,* No. 84–2538 (E.D.Pa. June 30, 1986) (Newcomer, J.) (upholding a jury's $300,000 punitive damages award on the basis of actual damages suffered and "in light of the kind of damages necessary to deter and punish a corporation of Exxon's magnitude"). Taking these factors into account, considering existing Pennsylvania

case law, and considering the factors relevant in setting the amount of a punitive damage award, the court finds that the punitive damage award of $750,000 in this case is excessive as a matter of law.[5] On the same bases, the court concludes that under the circumstances a punitive damage award of $30,000 is not excessive and is appropriate based on the record.

■ Accordingly, the proper procedure is for the court to pose to plaintiffs the following choice, *Carter v. District of Columbia,* 795 F.2d 116, 135 (D.C.Cir.1986); *Marcone v. Penthouse Int'l Ltd.,* 577 F.Supp. 318, 336–38 (E.D.Pa.1983), *rev'd on other grounds,* 754 F.2d 1072 (3d Cir.), *cert. denied,* 474 U.S. 864, 106 S.Ct. 182, 88 L.Ed.2d 151 (1985): consent to remittitur of the punitive damages awarded to Carol Pearl by the jury against F.E. Myers in excess of $30,000, or the court will order a new trial under Fed.R.Civ.P. 59(d) which would be held solely to fix the amount of punitive damages. *See Levinson v. Prentice–Hall, Inc.,* 868 F.2d 558, 565–66 (3d Cir.1989) (ordering new trial solely to set punitive damages when jury was not properly instructed on punitive damages).

An appropriate order follows.

### ORDER

AND NOW, this 15th day of March, 1989, upon consideration of the various motions and the responses thereto, and in accordance with the accompanying memorandum, it is hereby Ordered as follows:

1. The motion of F.E. Myers Co. for new trial on jury issue is DENIED.

2. The motion of F.E. Myers Co. for judgment notwithstanding the verdict is DENIED.

4. The court sees no merit or sense in plaintiffs' suggestion that it would be more "proper" to consider the ratio of the punitive damages awarded to Carol Pearl to the *sum* of compensatory damages awarded to Pearl and plaintiff Friedman, which would result in a ratio of punitive to compensatory damages of 46.9 to 1.0. As the jury's verdict made clear, the damage awards to Pearl and Friedman were separate and distinct.

5. Because the court reaches this conclusion under Pennsylvania law, I need not address Myers' constitutional argument on this issue. I note that the Supreme Court has granted certiorari in *Browning–Ferris Indus. v. Kelco Disposal,* —— U.S. ——, 109 S.Ct. 527, 102 L.Ed.2d 559 (1988), and will consider whether the eighth amendment's prohibition of excessive fines applies to punitive damage awards in civil cases.

3. The motion of F.E. Myers Co. for new trial (on grounds other than the jury issue) is GRANTED IN PART and DENIED IN PART, as follows:

a. The motion is GRANTED as follows: With regard to the excessiveness of the punitive damages award, plaintiffs have the following choice: consent to remittitur of the punitive damages awarded to Carol Pearl by the jury against F.E. Myers in excess of $30,000, or the court will order a new trial under Fed.R.Civ.P. 59(d). Plaintiffs shall file with the court their response to this proposition no later than ten (10) days from the filing of this Order. The response shall indicate whether the plaintiffs consent to the remittitur; in the event that plaintiffs do not so consent, the court will order a new trial (unless the parties inform the court that the case has been settled).

b. In all the respects, the motion is DENIED.

AND IT IS SO ORDERED.

## MEMORANDUM

The matter is before the court on plaintiff's motion for reconsideration of the court's Memorandum dated March 20, 1989, in which the court ordered a remittitur of the punitive damages awarded in this case from $750,000 down to $30,000.

## I

This action involved a personal injury claim arising out of plaintiffs' alleged exposure to polychlorinated biphenyls (PCBs). As alleged at trial, plaintiff Carol Pearl was exposed to PCBs after ingesting and showering in water contaminated as a result of the malfunction of a submersible water pump manufactured by Myers and installed in a water well at her home. The jury awarded Pearl compensatory damages of $1,000 and punitive damages of $750,-000. After trial, defendant Myers moved for judgment notwithstanding the verdict or new trial on several grounds, including the excessiveness of the punitive damage award. In a Memorandum dated March 20, 1989 [hereinafter Memorandum], the court reviewed the applicable case law and reached the following conclusion:

Taking these factors into account, considering existing Pennsylvania case law, and considering the factors relevant in setting the amount of a punitive damage award, the court finds that the punitive damage award of $750,000 in this case is excessive as a matter of law. On the same bases, the court concludes that under the circumstances a punitive damage award of $30,000 is not excessive and is appropriate based on the record.

Memorandum at 13–14.

In considering the excessiveness of the punitive damages award, the court noted that Pennsylvania law required that any punitive damages award must bear a "reasonable relationship" to the actual compensatory damages awarded. *Martin v. Johns–Manville Corp.*, 508 Pa. 154, 494 A.2d 1088, 1098 (1985). After reviewing the existing case law, the court found that punitive damage awards as high as 11.0 times the amount of compensatory damages awarded had been approved, while ratios ranging between 1.2 to 1.0 and 17.9 to 1.0 had been found excessive as a matter of law. In the instant case, the punitive damage amount was *seven hundred fifty times* the amount of compensatory damages. As the court noted, however, this ratio was skewed due to the low compensatory damage award, and furthermore, the court recognized that when egregious conduct generates minimal compensatory damages, higher punitive damages still might be justified.

It was with these factors in mind, then, that the court found the punitive damage award of $750,000 excessive as a matter of law. On the same bases, the court concluded that under the circumstances a punitive damage award of $30,000 was not excessive and was appropriate based on the record. Accordingly, the court posed to plaintiffs the following choice: consent to remittitur of the punitive damages of $30,-000, or the court would order a new trial under Fed.R.Civ.P. 59(d) which would be held solely to fix the amount of punitive damages. Memorandum at 14.

## II

Subsequent to the issuance of the aforementioned Memorandum, it was brought to the court's attention that the Pennsylvania Supreme Court had overruled the "reasonable relationship" requirement it had previously set forth in *Martin v. Johns–Manville Corp.*, 508 Pa. 154, 494 A.2d 1088 (1985).[1] In reaching this conclusion, that court stated:

> If the amount of punitive damages must bear a reasonable relationship to the injury suffered, then those damages probably would not serve as a deterrent. It becomes clear that requiring punitive damages to be reasonably related to compensatory damages would not only usurp the jury's function of weighing the factors set forth in Section 908 of the Restatement (Second) of Torts, but would also prohibit victims of malicious conduct, who fortuitously were not harmed, from deterring future attacks.
>
> We are, however, cognizant that at some point the amount of punitive damages may be so disproportionate when compared to the character of the act, the nature and extent of the harm and the wealth of the defendant, that it will shock the court's sense of justice. In those rare instances, the court is given discretion to remit the damages to a more reasonable amount.

*Kirkbride v. Lisbon Contractors*, 555 A.2d at 803 (Pa.1989). As a result of the *Kirkbride* decision, plaintiff has asked for reconsideration of the court-ordered remittitur.

## III

After consideration and review of the *Kirkbride* decision, the court is satisfied that the reasoning, conclusions, and decision set forth in the Memorandum dated March 20, 1989, are in accordance with the Pennsylvania Supreme Court's pronounce-ments in *Kirkbride.* Although the court's prior discussion was made in light of the "reasonable relationship" standard, it is clear that the court's decision to remit and the determination of an appropriate amount of punitive damages was made based on many of the considerations deemed relevant in *Kirkbride* and was not limited solely to "reasonable relationship" considerations.[2]

Furthermore, the court notes that while discarding the "reasonable relationship" requirement in *Kirkbride*, the Pennsylvania Supreme Court recognized that the amount of punitive damages might at some point be so disproportionate when compared to the character of the act, the nature and extent of the harm and the wealth of the defendant, that it will shock the court's sense of justice. *Kirkbride*, at 803. When that occurs, the Court stated, "the court is given discretion to remit the damages to a more reasonable amount." *Id.* at 803. In the instant case and consistent with *Kirkbride*, the court finds that the $750,000 award shocks the court's sense of justice. Therefore, the court reaffirms its prior ruling that the $750,000 award is excessive as a matter of law and that under the circumstances, a punitive damage award of $30,000 is not excessive and is a more reasonable amount based on the record. Accordingly, plaintiff's motion for reconsideration will be denied.

An appropriate order follows.

### ORDER

AND NOW, this 10th day of April, 1989, upon consideration of the plaintiff's motion for reconsideration and the response thereto, and in accordance with the accompanying memorandum, it is hereby Ordered that the motion is DENIED.

In their motion for reconsideration, plaintiffs stated that in the event their motion was denied, they reject the remittitur. As

---

1. Neither the parties' nor the court's research had uncovered the existence of the Pennsylvania Supreme Court's opinion in *Kirkbride v. Lisbon Contractors,* 555 A.2d 800 (Pa.1989).

2. In fact, had the court strictly applied the "reasonable relationship" precedents cited in the Memorandum, the punitive damage award might have been limited to an amount no greater than *eleven* times the amount of compensatory damages (i.e., $11,000 in this case). *See* Memorandum at 11–13.

indicated in the Memorandum and Order dated March 20, 1989, plaintiffs' rejection of the remittitur requires the court to order a new trial under Fed.R.Civ.P. 59(d). Therefore, it is hereby ORDERED that a new trial will occur in this matter. In this regard, a CONFERENCE shall be held in chambers on April 19, 1989, at 4:45 p.m. Counsel should notify the deputy clerk if a telephone conference is preferred.

AND IT IS SO ORDERED.